CRAIN, J.
In this child custody dispute, the mother, Carmen Hawkins (formerly Burns), appeals a judgment that modifies the parties' joint custody arrangement to name the father, Robert Arthur Burns II, as the domiciliary parent, and changes an equal-sharing physical custody schedule to one where the mother has physical custody only on alternating weekends and one night every other week. We reverse and remand.
FACTS
Carmen Hawkins and Robert Burns divorced in May 2014. They are the parents of two children, born September 28, 2004, and October 26, 2005. In connection with their divorce, Hawkins and Burns agreed to joint custody of the children, with Hawkins named the domiciliary parent. They *573 further agreed to exercise physical custody in accordance with an alternating "two/two/three plan," alternating weekends, and further alternating Mondays and Tuesdays, and Wednesdays and Thursdays.[1] A consent judgment was signed May 20, 2014, in accordance with the parties' agreement.
In June 2016, Burns filed a motion to modify custody, seeking to change the joint custody plan and have himself designated the domiciliary parent. He alleged the change was warranted because Hawkins moved with the children into her boyfriend's residence and often left the children "with random people while she attend[ed] events with her boyfriend." Burns asserted that it was in the children's best interest to reside primarily with him.
A hearing on the motion was held on September 29, 2016. Burns, his current wife, and Hawkins testified, and evidence was introduced. At the conclusion of the hearing, the trial court commented that the "two/two/three schedule [was not] in the benefit of-of anybody, not the children and not the parents." The trial court said a change of custody required a material change in circumstances, and noted the parties previously agreed that upon remarriage, either party could seek modification of custody or visitation in accordance with the law. The trial court found a modification warranted because Burns remarried, Hawkins was engaged, and "the parties both agree that the two/two/three schedule is not workable at this time." After weighing the factors in Louisiana Civil Code article 134, the trial court determined it was in the children's best interest that joint custody continue, but with Burns as the domiciliary parent and Hawkins exercising physical custody during the school year on alternating weekends and alternating Wednesday nights. A custody schedule for the summer months and holidays was created, and a judgment was signed on November 3, 2016.
Hawkins appeals, alleging the trial court committed legal error by applying the wrong burden of proof, requiring only a material change in circumstances rather than a material change in circumstances affecting the welfare of the children. She further contends Burns' remarriage is not a material change in circumstances affecting the welfare of the children and there is insufficient evidence to support a modification of the custody arrangement.
DISCUSSION
Where parties consent to a custodial arrangement and a consent decree or stipulated judgment is rendered, a party seeking to modify the custody plan is required to prove (1) a change in circumstances materially affecting the welfare of the children, and (2) the proposed modification is in the best interest of the children. Tinsley v. Tinsley , 16-0891 (La. App. 1 Cir. 1/18/17), 211 So.3d 405, 412. The trial court's determination regarding the required change in circumstances is based heavily on factual findings and cannot be set aside in the absence of manifest error or unless it is clearly wrong. See Tinsley, 211 So.3d at 415 ; Bonnecarrere v. Bonnecarrere, 09-1647 (La. App. 1 Cir. 4/14/10), 37 So.3d 1038, 1044, writ denied, 10-1639 (La. 8/11/10), 42 So.3d 381. However, where one or more legal errors interdict the fact-finding process, the appellate court must perform a de novo review of *574 the record. Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731, 735.
In support of her contention that the trial court committed legal error by applying an incorrect burden of proof, Hawkins points to oral reasons for judgment where the trial court concluded that a change in custody depended upon a finding "that a material change in circumstances has occurred," omitting "the 'material change in circumstances affecting the welfare of the child' burden required by this circuit." Hawkins cites Tinsley for the proposition that to change a consent custody decree, the proponent of the change must prove (1) a material change in circumstances, and (2) the change affects the welfare of the child. While Hawkins correctly states the applicable burden of proof, we disagree that the trial court's oral reasons reflect a misrepresentation of that burden.
In Tinsley, the proponent of a change in custody argued that the supreme court's decisions in Tracie F. v. Francisco D., 15-1812 (La. 3/15/16), 188 So.3d 231, 239-40, and Evans, 708 So.2d at 738, required him to prove only (1) a material change in circumstances since the previous custody decree, and (2) the modification is in the best interest of the child. He argued that there was no requirement that he prove the material change in circumstances affect on the child's welfare. Tinsley, 211 So.3d at 412. This court rejected that argument, pointing out that neither Trade F. nor Evans eliminated the requirement that a change in circumstances materially affect the child's welfare. The Tinsley court concluded that the requirement that a material change in circumstances materially affect the child's welfare was implicit in the supreme court's decisions. See Tinsley, 211 So.3d at 412-13.
The trial court's terminology when referring to the burden of proof, which mirrored the supreme court's terminology in Trade F., does not misrepresent the burden of proof. Rather, Tinsley supports our conclusion here that implicit in the trial court's statement of the burden of proof is the requirement that the change in circumstances also materially affect the welfare of the children. Hawkins' contention that the trial court committed legal error by applying the wrong burden of proof is without merit.
Next, we consider whether the trial court manifestly erred by finding a change in circumstances materially affecting the welfare of the children. To support its conclusion, the trial court found (1) the parties agreed the current custody agreement is not workable, and (2) Burns remarried, and Hawkins is engaged, circumstances allowing either party to seek modification of custody or visitation under the custody agreement.
The record does not establish that both parties agreed the current custody arrangement is not working.[2] Burns testified he believed the schedule was "just too much just back and forth for [the children]," and the children needed stability. When asked how she felt about the current custody arrangement, Hawkins answered, "Quite frankly, I didn't know there was a problem with it until all of this came about." She explained:
I do think my children would do a little better from maybe a week at a time and not the split days. But we did the split days in the beginning, the Monday, Tuesday, Wednesday, Thursday, because [one of the children] had a very hard time ... [a]nd now they're very *575 comfortable both ways, and I have not had a problem. So I think that it-a week at a time would probably be better, but I did not know there was any custody issues until now.
She later added:
I mean, the 50/50 has worked, as far as I'm concerned. Like I said, I do think a week at a time would be easier. We came up with the two -Monday, Tuesday, Wednesday, Thursday and every other weekend ourselves. I think a week at a time at their age right now would be easier. But 50/50. I mean, I don't see why there wouldn't be 50/50.
These statements do not establish an agreement or stipulation that the existing custody arrangement was not working so as to eliminate the requirement of proving a change in circumstances materially affecting the welfare of the children. Compare Lunney v. Lunney, 11-1891 (La. App. 1 Cir. 2/10/12), 91 So.3d 350, 354, writ denied , 12-0610 (La. 4/4/12), 85 So.3d 130. The trial court erred in finding such an agreement by Hawkins.
Relying on the terms of the prior custody agreement, the trial court also found Burns' remarriage and Hawkins' engagement to be changes in circumstances. The prior custody agreement provides that "[u]pon marriage or remarriage, either party may seek a modification of custody or visitation, in accordance with the law. " (Emphasis added.)
A consent judgment is a bilateral contract; therefore, its provisions are subject to the general rules of contractual interpretation. See St. Cyr v. St. Cyr, 16-0896 (La. App. 1 Cir. 2/21/17), 215 So.3d 283, 285, writ denied, 17-0511 (La. 3/31/17), 217 So.3d 357 ; Baker v. Baker, 12-0911, 2013 WL 1791077, p.4 (La. App. 1 Cir. 4/26/13), writ denied, 13-1218 (La. 9/13/13), 122 So.3d 545 ; Richardson v. Richardson, 02-2415 (La. App. 1 Cir. 7/9/03), 859 So.2d 81, 84-85. Each provision must be interpreted in light of other provisions so each is given meaning suggested by the contract as a whole, and when the words of the contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. Richardson, 859 So.2d at 85 ; see also La. Civ. Code arts. 2045 and 2046. Such intent is determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable, and fair basis. Freeport-McMoran, Inc. v. Transcontinental Gas Pipe Line Corp., 04-0031 (La. App. 1 Cir. 10/14/05), 924 So.2d 207, 212, writ denied, 05-2358 (La. 3/31/06), 925 So.2d 1256.
By its plain language, the parties' agreement requires them to seek any modification based upon remarriage in accordance with the law. A party's remarriage, alone, does not constitute a change in circumstances warranting a change in custody. Tinsley, 211 So.3d at 417 ; see also Mosely v. Mosely, 499 So.2d 106, 108-09 (La. App. 1 Cir. 1986), writ denied, 505 So.2d 1138 (La. 1987) ; Ketchum v. Ketchum, 39,082 (La. App. 2 Cir. 9/1/04), 882 So.2d 631, 637 ; Shaw v. Shaw, 30,613 (La. App. 2 Cir. 6/24/98), 714 So.2d 906, 909, writs denied, 98-2414 (La. 11/20/98), 729 So.2d 556 and 98-2426 (La. 11/20/98), 729 So.2d 558. Rather, remarriage is one factor, to be considered in combination with any others, used to determine a change in circumstances. See Tinsley, 211 So.3d at 418. Here, Burns testified that his home is "stable"; however, he offered no evidence of any effect his June 11, 2015 marriage, after the couple lived together for ten *576 months, had on the children.[3]
The trial court additionally referenced Hawkins' engagement and Burns argues on appeal that Hawkins' change in lifestyle supports the finding of a material change in circumstances. Burns testified that Hawkins lives with her boyfriend, who rides motorcycles and plays in a band, and that he did not believe that "a roadie type band lifestyle" was conducive to raising young children. Burns submitted copies of Facebook posts for the band, pictures of Hawkins' boyfriend with a firearm, as well as copies of Facebook posts with commentary that Burns believed suggested that the children would be present at a party where adults would be heavily drinking. Burns also submitted pictures of his children on the back of a motorcycle driven by someone he did not know, and testified that his daughter had been allowed to go to Mississippi with people he did not know. He testified that he believed Hawkins was putting the children in harm's way, indicating that she left the children with babysitters, and he did not know who was watching his children.
Burns' testimony establishes that he disapproves of Hawkins' boyfriend and lifestyle. However, Burns offered no evidence any effect Hawkins' actions actually had on the children. He did not establish that the children were neglected or were not cared for when in Hawkins' custody, even if the children were on occasion left with babysitters. Nor did he establish that the children were being negatively influenced or were in any danger, as he suggested. While Burns believed that the Facebook posts suggested that the children would be at a party with adults heavily drinking, he offered no evidence that the children were actually present at such an event. And while Burns offered pictures showing that the children were on the back of a motorcycle, he did not establish that this happened on more than that single occasion, or that the children were in any danger.[4]
After a thorough review of the evidence presented in this case, we find that the trial court was manifestly erroneous in concluding that Burns proved a change in circumstances warranting modification of the prior custody decree. Because the first requirement for modifying the consent judgment was not satisfied, and the required change was not shown, the inquiry ends and there is no basis for altering the physical custody decree. See Tinsley, 211 So.3d at 418. Consequently, the November 3, 2016 judgment modifying the custody arrangement in the prior consent judgment is reversed.
CONCLUSION
The trial court's November 3, 2016 judgment is reversed and the custody arrangement established by the May 20, 2014 consent judgment is reinstated. All costs of this appeal are assessed to Robert Arthur Burns II.
NOVEMBER 3, 2016 JUDGMENT REVERSED; MAY 20 2014 JUDGMENT REINSTATED.

Burns testified the schedule meant for every two week period, during week one, he had custody on Monday, Tuesday, Friday, Saturday, and Sunday, then during week two he had custody on Wednesday and Thursday.

The record was designated by Hawkins to include all pleadings filed on or after May 12, 2014, the date the parties' original joint custody agreement was filed.

Burns testified he and Hawkins agreed it was "okay" for either of them to live with another party.

Hawkins testified that the photographs were taken at a motorcycle-themed birthday party for a friend's ten-year-old daughter where each child was driven on a motorcycle once around the neighborhood block while wearing a helmet.