## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-349


CORNELL MARK JOUBERT

VERSUS

FRANCESCA ANTOINETTE STEWART JOUBERT


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-5222
HONORABLE LILYNN CUTRER, DISTRICT JUDGE

**********

## JONATHAN W. PERRY
## JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**AFFIRMED AS AMENDED AND
REMANDED WITH INSTRUCTIONS.**

**Frank Granger**
**1135 Lakeshore Drive, 6th Floor**
**Lake Charles, LA 70601**
**(337)-439-2732**
**Counsel for Plaintiff/Appellant:**
       **Cornell Mark Joubert**

**B. Thomas Shea**
**Tom Shea Family Law, L.L.C.**
**1 Lakeshore Dr., Suite 1720]**
**Lake Charles, LA 70629**
**(337)-564-4148**
**Counsel for Appellee:**
       **Francesca Antoinette Stewart Joubert**

**PERRY, Judge.**

This case addresses the question of whether the mother of two minor children showed a material change in circumstances to upset a prior consent judgment that had established custody and visitation. For the following reasons, we amend and affirm, and remand to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

Cornell and Francesca Joubert were married on May 23, 1998. The parties have two minor sons, J. B. born on October 17, 2003, and C. J. born on December 31, 2008, and one major daughter, K.J. Thereafter, on December 28, 2016, Cornell, who was represented by counsel, filed for a divorce pursuant to La.Civ.Code art. 103. Although Francesca was not represented by counsel, she participated in the preparation of the divorce petition, property settlement, child custody, and child support agreement in which Francesca agreed to pay Cornell child support of $1,700.00 a month.[1] These items were memorialized on December 28, 2016, in a stipulated judgment which, among other matters, indicated their agreement that the parties would have joint custody of the minor children. As reflected in the Joint Custody Plan that the parties implemented, the parties adopted the following visitation provisions:

1. The primary domicile shall be at the residence of **CORNELL MARK JOUBERT**, who is designated as the domiciliary parent.

2. The parties shall have the children in their care as follows:

   a. *Standard Visitation:* Reasonable with the parties to work out the details on their own, and with the parties to take into consideration the age of the children and their activities and the like.

---

[1] On January 18, 2018, Francesca filed a motion to modify her child support obligation. Shortly after appearing before the Hearing Officer, the parties agreed that Francesca would dismiss her motion to modify child support and Cornell agreed to maintain insurance on the children through his employment. The parties signed a consent judgment regarding this agreement on March 3, 2018.

b. *Summer Visitation:*  Reasonable with the parties to work out the details on their own, and with the parties to take into consideration the age of the children and their activities and the like.  They will be flexible with each other on vacation plans.

c. *Holiday Visitation:*  Reasonable with the parties to work out the details on their own, and with the parties to take into consideration the age of the children and their activities and the like.  The parties will work with each other to continue the children's involvement in family customs and traditions.

On May 30, 2017, Francesca filed a rule to modify custody, seeking to outline a specific access schedule which is in line with a 50/50 shared custody schedule.  As justification for her modification request, Francesca outlined the following three material changes in circumstances: (a) Cornell has not allowed her to have reasonable access; (b) Francesca has made multiple pleas for more access but Cornell has refused such; and (c) Cornell's work schedule makes it more difficult for him to spend as much time with the minor sons as Francesca's work schedule allows.

After conducting a two-day trial on July 26, 2018, and October 18, 2018, the trial court: (1) determined that because the parties' original judgment on custody and visitation was a consent judgment, the heavy burden outlined in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), was inapplicable; thus, the moving party only had to show a material change in circumstances since the original decree and that the proposed modification was in the best interest of the children; (2) found the following showed a material change in circumstances: (a) the parties were never able to agree on a visitation schedule; (b) Cornell imposed a plan that he determined was reasonable; and (c) the parties were unable to agree on a plan so that each would share equal time with the boys.  After thoroughly reviewing the twelve best interest factors outlined in La.Civ.Code art. 134, the trial court granted Francesca's motion

2

to modify custody, awarded them joint custody, named Cornell the domiciliary parent, and granted visitation according to a joint custody plan.

Cornell appeals, contending: (1) the trial court erred when it found Francesca proved a material change of circumstances and by using the best interest of the children factors in La.Civ.Code art. 134 as a framework to satisfy the material change of circumstances analysis requirement in a child custody modification action; and (2) its findings of fact were manifestly erroneous and clearly wrong by failing to consider all of the facts proven at trial in analyzing the best interest factors to modify the previous stipulated custodial visitation agreement between Cornell and Francesca.

## STANDARD OF REVIEW

The trial court's factual conclusions are given substantial deference by appellate courts in child custody matters. *Steinebach v. Steinebach*, 07-38 (La.App. 3 Cir. 5/2/07), 957 So.2d 291. Unless there is a legal error, "[t]he determinations made by the trial judge as to custody . . . will not be set aside unless it clearly appears [from the record] that there has been an abuse of discretion[.] " *Nugent v. Nugent*, 232 So.2d 521, 523 (La.App. 3 Cir.1970); *see also Mulkey v. Mulkey*, 12-2709 (La. 5/7/13), 118 So.3d 357. "The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts." *McCorvey v. McCorvey*, 05-174, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, 362, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300.

Absent legal error, appellate courts must "review the record in its entirety and (1) find that a reasonable basis does not exist for the finding, and (2) further determine that the record clearly establishes that the fact finder is clearly wrong or manifestly erroneous" before a court's factual findings and conclusions can be

3

reversed. *Moss v. Goodger*, 12-783, p. 5 (La.App. 3 Cir. 12/12/12), 104 So.3d 807, 810. If the trial court's findings of fact are reasonable, appellate courts should not reverse them. *Id.* However, appellate courts are also prohibited from simply rubberstamping a trial court's findings of fact. *Id.* Instead, we are constitutionally mandated to review all the facts contained in the record and determine whether the trial court's findings are reasonable considering the entire record. *Id.*

Additionally, when a trial court applies incorrect legal principles and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. "[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Id.* at 735.

## MATERIAL CHANGE IN CIRCUMSTANCES

From the outset, Cornell asserts the trial court legally erred when it relied on the factors of La.Civ.Code art. 134 to determine if Francesca proved a material change of circumstances occurred. In support of his contentions, Cornell draws our attention to these words in the trial court's written reasons for judgment, "Using [the factors of La.Civ.Code art. 134] as a framework for analysis, the Court will now determine if a material change in circumstances has occurred and if the proposed modification is in the best interest of [the minor sons]."

It cannot be denied the trial court included those words in its written reasons for judgment. Nevertheless, it is likewise clear that those words are immediately followed by a section entitled "Material Change in Circumstances" and no reference to the factors of La.Civ.Code art. 134 is mentioned. Contrary to Cornell's assertion that the trial court relied upon the factors enunciated in La.Civ.Code art. 134 in the

4

determination of the question of whether Francesca established a material change in circumstances, the trial court's written reasons demonstrate just the opposite. It was only after the trial court determined that a material change in circumstances existed that it stated that it "will now address the best interest factors set forth in *La.Civ.Code art. 134* to determine what custody arrangement is in the best interest of Joshua and Caleb." Having found no legal error in the trial court's analysis of this threshold element, we will now examine Cornell's assertion that the trial court erred when it found that Francesca established that there was a material change in circumstance that negatively impacted the welfare of the two minor children.

The time parents with joint legal custody share with their children is a physical custody allocation of a joint custody plan. *Cedotal v. Cedotal*, 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433. In an action to modify a custody decree, the trial court must first determine whether the decree is a considered decree or a consent decree. *See Moss,* 104 So.3d 807. "A consent judgment is a bilateral contract[.]" *Burns v. Burns,* 17-343, p. 6 (La.App. 1 Cir. 11/3/17), 236 So.3d 571, 575. When the underlying decree is a stipulated judgment (i.e., no evidence of parental fitness was taken by the court), the moving party has the burden of proving that a material change in circumstances has occurred since rendition of the underlying decree, and that the modification will be in the child's best interest. *See Evans*, 708 So.2d 731. Elaborating on this twofold burden of proof, this court stated in *Prather v. McLaughlin*, 16-604, p. 5 (La.App. 3 Cir. 11/2/16), 207 So.3d 581, 585:

> However, in order to achieve stability and avoid continuous litigation, our courts . . . have also added an additional condition on a parent who wishes to modify a prior stipulated joint custody decree—proof that there has been a material change in circumstance since the last decree warranting a change in custody that the court finds is in the best interest of the child.
>
> Some courts have held that for a material change of circumstances to be "sufficient to alter the custody plan . . . the material

5

change of circumstances 'must be of a substantial and continuing nature to make the terms of the initial decree unreasonable.'" *Tarver v. Tarver*, 15-219 (La.App. 3 Cir. 10/7/15) (unpublished opinion) (citing Linda D. Elrod, Child Custody Practice and Procedure § 17:5 (database updated 2015).

Moreover, "the ultimate question which must be answered is whether the change in circumstances will negatively impact the welfare of the child." *LeBlanc v. LeBlanc*, 06-1052, p. 9 (La.App. 3 Cir. 2/14/07), 951 So.2d 500, 507, *writ denied*, 07-562 (La. 4/5/07), 954 So.2d 146.

Should the party urging a change of the physical custody allocation of a joint custody plan fail to show a material change in circumstances, the inquiry ends, and there is no basis for altering the consent judgment. *Lunney v. Lunney*, 11-1891 (La.App. 1 Cir. 2/10/12), 91 So.3d 350, *writ denied*, 12-610 (La. 4/4/12), 85 So.3d 130. Each "custody case must be viewed within its own peculiar set of facts." *Cedotal*, 927 So.2d at 437. Thus, a trial court's determination of whether a material change in circumstances has occurred is a factual finding. *See Kyle v. Kier*, 17-134 (La.App. 3 Cir. 11/15/17), 233 So.3d 708; *See also Bonnecarrere v. Bonnecarrere*, 09-1647 (La.App. 1 Cir. 4/14/10), 37 So.3d 1038, *writ denied*, 10-1639 (La. 411/10), 42 So.3d 381. Nevertheless, "[a]n appellate court . . . is not compelled to slavishly rubberstamp a trial court's finding." *Guinn v. Guinn*, 16-926, p. 21 (La.App. 3 Cir. 5/31/17), 223 So.3d 139, 152; *Moss*, 104 So.3d at 810.

In its written reasons for judgment, the trial court, determining that a material change in circumstances occurred since the time of the consent judgment, based its conclusion on a threefold finding: (1) "[t]he parties fail[ed] to work out an agreed upon visitation schedule; (2) "Cornell impose[d] a plan that he determined was reasonable;" and (3) "the parties [were unable] to share equal time with the boys[.]"[2]

---

[2] In her Rule to Modify Custody, Francesca also contended that Cornell's work schedule made it more difficult for him to spend time with the boys. The trial court made no finding in this regard, and Francesca has not raised this in any argument to this court. The record shows Cornell's

6

The present case epitomizes a stipulated judgment entered into by two parents who are well-educated, who live within one mile of each other, who love their children, and who attempted to implement reasonable visitation "with the parties to work out the details on their own." As the record shows, the inability of the parties to agree to a visitation schedule showed signs of disagreement within two months of their stipulated judgment and continued thereafter. Notwithstanding, as of January 2018, Francesca had visitation with her children every other weekend, Friday after school through Monday morning, and overnight every Wednesday during the school year,[3] for a total of ten days each month; she also alternated weeks during summer[4] and split the major holidays. Nevertheless, Francesca sought an additional overnight visitation on Thursdays during the school year to more closely provide her with a 50/50 custodial arrangement.

Louisiana Revised Statutes 9:335(A)(2)(b) provides that, to the extent feasible and in the best interest of the child, physical custody should be shared equally. When the trial court is faced with a decree of joint custody, such as the one in the present case, the statute does not necessarily require an equal sharing of physical custody. *Yerger v. Yerger*, 49,790 (La.App. 2 Cir. 2/27/15), 162 So.3d 603; *Langford v. Langford*, 49,080 (La.App. 2 Cir. 4/9/14), 138 So.3d 101. Substantial time rather than strict equality of time is mandated by the legislative scheme. *Yerger,* 162 So.3d 603*; Semmes v. Semmes*, 45,006 (La.App. 2 Cir. 12/16/09), 27 So.3d 1024. The

---

work schedule allowed him to be home when his sons got out of school, and he was free every weekend.

[3] Francesca rightly points out that Cornell did not originally agree to allow her visitation overnight on Wednesdays. It was only after she filed her Rule to Modify Custody on May 30, 2017, that Cornell agreed to allow her overnight visitation on Wednesdays.

[4] Though it is somewhat unclear in the record, it appears that in the summer of 2016, Cornell only agreed to allow Francesca one-week visitation in June and July. Nevertheless, in 2017 and 2018, the parties alternated weeks during the summer and were agreeable to continue this arrangement.

allocation of the time periods during which each parent shall have physical custody of the child is required to assure of frequent and continuing contact of the children with both parents. La.R.S. 9:335(A)(2)(a); *Yerger,* 162 So.3d 603. Notwithstanding, the jurisprudence has further recognized that the implication of La.R.S. 9:335 is that most joint custody decrees will invariably result in children primarily residing with one parent more than the other. *Langford*, 138 So.3d 101; *Stephenson v. Stephenson*, 37,323 (La.App. 2 Cir. 5/14/03), 847 So.2d 175.

A review of the jurisprudence from this circuit shows numerous factual scenarios that fail to rise to the level of a material change of circumstance sufficient to change the physical custody allocation of a joint custody plan, *e.g.*: *Tarver v. Tarver*, 15-219 (La.App. 3 Cir. 10/7/15) (unpublished opinion) (child had excessive school absences and often appeared unkempt); *Montalvo v. Montalvo*, 02-1303 (La.App. 3 Cir. 4/17/03), 854 So.2d 902 (the mother moved multiple times, took her child in and out of daycare, and allowed men to cohabit with her or stay with her overnight); *LeBlanc*, 951 So.2d 500 (mother's move to relocate intrastate to a new city; child exhibited aggressive behavior; alleged conflict in receiving visitation and the alleged mother's instability); *Cooley v. Cooley*, 94-251 (La. App. 3 Cir. 10/5/94), 643 So.2d 408 (mother's adulterous meetings after the entry of a stipulated decree of custody insufficient because there was no evidence the child was exposed to sexual activity).

Turning now to the facts of the present case, the record is clear the two children are doing well in school and the record is void of any evidence that there are any signs that their welfare is compromised. It is equally clear that although Cornell may have been recalcitrant and obstinate with Francesca's requests for greater visitation, the record shows the parties have settled into a schedule of physical custody for both during the school year and summer months, and do not

8

have significant complaints of visitation during the holidays. Although Francesca may not have equal time with her minor sons, the record shows that both parents have frequent and continuing contact with the children.

On the record before us and considering well established jurisprudence, we find that Francesca has failed to prove a material change in circumstances that negatively impacts the children. Therefore, we find the trial court abused its discretion in finding otherwise and in increasing Francesca's visitation to include overnight visitation on Thursdays during the school year. Notwithstanding our finding in this regard, our inquiry does not end here.

Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. *Mulkey*, 118 So.3d 357. Visitation schedules can be altered when conditions warrant it, even when there lacks evidence supporting the modification of a prior custody decree. *Mason v. Mason*, 16-287 (La.App. 3 Cir. 10/5/16), 203 So.3d 519; *Brantley v. Kaler*, 43,418 (La.App. 2 Cir. 6/4/08), 986 So.2d 188.[5]

In *Brantley*, our colleagues of the second circuit found no error when the trial court found the mother failed to meet the jurisprudential requirements for modification of a custody decree and yet tweaked the decree. In that instance, the trial court reduced the mother's visitation time from every other week to every other weekend. At the basis of that decision was the observation that the parties conceded that the prior 50/50 plan of sharing was unfeasible.

Elaborating on the trial court's authority to alter visitation schedules even when the evidence did not support modification, this court stated in *Mason*, 203 So.3d at 530:

---

[5] Although both these cases involved considered decrees, one that required the heavier *Bergeron* standard, we perceive no difference in applying it to the present case, one that involves a stipulated judgment with a lower burden of proof.

The trial court, in this matter, stated in its written ruling that it was "going to modify the prior judgment only to help these people . . . solve some of their issues." These minor modifications included reverting back to the standard plan regarding exchanging Kara, limiting Deanna's visitation to three and four-day weekends, ordering Deanna to provide George a week's written notice regarding visitation, and ordering future communication between the parents to take place through a program called Family Wizard. Just as in *Brantley*, 986 So.2d 188, we cannot say that this judgment undermines Kara's best interest, and we perceive no abuse of the trial court's great discretion.

In the present case, it is evident from the trial court's written reasons that it found a specified visitation schedule was needed in the Joint Custody Plan to better serve the best needs of the children. It is also clear from the record that, even though she did not initially want a schedule of visitation, Francesca, within months of the implementation of the stipulated Joint Custody Plan, also desired a specified visitation schedule and petitioned the court to get one. Likewise, in his brief to this court, Cornell agrees that there should be a specific Joint Custody Plan that would "reflect the plan practiced by the parties since their Joint Custody Plan was signed[.]" Albeit, the trial court expanded the visitation schedule to include overnight visitation on Thursdays during the school year, an expansion we find improper because Francesca failed to establish a material change of circumstances, the remainder of the revised Joint Custody Plan simply incorporates what the two parents wanted. Accordingly, under the rationale of *Mason,* 203 So.3d 519, and *Brantley,* 986 So.2d 188, we view this as properly within the authority of the trial court. Therefore, we remand this matter to the trial court to amend the Joint Custody Plan of February 13, 2019, to excise the Thursday overnight visitation it extended in favor of Francesca, with the remainder of that plan to remain intact.

Having so found, we observe that the record speaks volumes of the extent Francesca and Cornell went to during their year of separation prior to divorce so that the transition was as smooth as possible, at all times making the best interest of the

10

children their primary goal. Nevertheless, we find it imperative to note that though there may not have been a material change of circumstances established, the record does reflect instances where both parents have exhibited behavior toward each other in the exercise of visitation that did not facilitate contact with the children in the spirit of the bilateral contract into which they entered. Certainly, the record shows instances where Cornell was less than cooperative in addressing Francesca's visitation requests. Likewise, the record shows that Francesca failed to communicate to Cornell the details of extracurricular activities in which she involved the boys. In that regard, we remind both parents of the other provision of the Joint Custody Plan, the one adopted by them on December 28, 2017, and the one the trial court crafted on February 13, 2019, both of which are more or less the same, to-wit:

> The parents are encouraged to be flexible in this schedule and to allow the non-domiciliary parent visitation with the children above that which is stipulated when that additional visitation is reasonable, does not interfere with the children's routine home, school and extra-curricular activities, when that visitation facilitates open and natural access between the children and the non-domiciliary parent and therefore is in the best interest of the children; however, in the event the parties are unable to agree on reasonable, informal visitation, then the terms of the foregoing schedule shall be complied with.

With cooperation between the parents and with the guidance of the trial court's Joint Custody Plan, the best interest of the two children will be met.

**DISPOSITION**

For the foregoing reasons, the judgment of the trial court is affirmed as amended, and this matter is remanded to the trial court to excise the Thursday overnight visitation it extended in favor of Francesca from the Joint Custody Plan, with the remainder of that plan to remain intact. Costs of this appeal are assessed equally to Francesca and Cornell.

**AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS**.