# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2022 CU 0631

## LANA ARENDER GEE

## VERSUS

## ERIC DANIEL GEE

Judgment Rendered: **DEC 1 5 2022**

\* \* \* \* \* \* \*

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2010-15922

Honorable Dawn Amacker, Judge Presiding

\* \* \* \* \* \* \*

Dwazendra J. Smith                     Attorney for Plaintiff/Appellant,
Lafayette, Louisiana                    Lana Arender Gee


Robert C. Lowe                          Attorneys for Defendant/Appellee,
David M. Prados                         Eric Daniel Gee
New Orleans, Louisiana


\* \* \* \* \* \* \*


**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

Welch, J. concurs without reasons

**PENZATO, J.**

Lana Arender Gee appeals the trial court's judgment granting Eric Gee's motion to modify custody and visitation and for contempt and denying her motion to modify custody and visitation. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Lana Gee and Eric Gee were married in 1995, and had two children during their marriage, A.C.G., born in September, 2005, and E.G., born in August, 2009.[1] On September 16, 2010, Ms. Gee filed a petition for divorce. The parties entered into a consent judgment, signed by the court on September 21, 2010, which provided that the parties would "arrange visitation of the minor children between themselves." The judgment further provided that the parties would abide by co-parenting guidelines, including sharing information about the medical, educational, social, psychological, extra-curricular, and religious aspects of the minor children's lives in a timely and cooperative manner; and encouraging the children to have a relationship with the other parent and not belittling each other to the children or in front of the children. On November 12, 2010, the parties entered into an amended consent judgment, which provided they would have joint custody of the minor children, with Ms. Gee designated as the domiciliary parent. Mr. Gee was given physical custody[2] of the minor children every other weekend from Friday after school until Sunday at 6:00 p.m., and every Wednesday overnight. The judgment further provided for holiday visitation. All provisions of the September 21, 2010 consent judgment not affected by the amended consent judgment remained in full force and effect. The

---

[1] In order to protect the identity of the minor children, we refer to the minor children by their initials throughout this opinion. See Uniform Rules—Courts of Appeal, Rule 5-1 and 5-2.

[2] We note that the judgment uses the term "visitation" with reference to Mr. Gee's physical custodial times; however, the parties were awarded joint custody of their minor children. "Visitation," as provided for in La. C.C. art. 136, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their children is more properly described as physical custody, rather than as visitation. La. R.S. 9:335; *Cedotal v. Cedotal*, 2005-1524 (La. App. 1 Cir. 11/4/05), 927 So.2d 433, 436; see *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731, 737.

parties were divorced by judgment signed December 1, 2011.

The parties had a workable co-parenting relationship until August 10, 2019. That evening, after the children went to bed, Mr. Gee discovered a text message exchange on A.C.G.'s cellphone between her and Ms. Gee, wherein Ms. Gee referred to Mr. Gee's wife, Lauren, as a child. The following morning, he and Mrs. Lauren Gee had "a heated conversation" with A.C.G. about the text message. According to Mr. Gee, upon his first visitation with the children after this incident, there was a marked difference in the children's attitude toward him and Mrs. Lauren Gee. Mr. Gee alleged the children were sullen and withdrawn; cried more often; said troubling and disturbing things about Mr. Gee exercising physical custody; resisted going with him; and stated they did not feel safe in Mr. Gee's custody.

On September 4, 2019, Mr. Gee filed a rule to modify custody, alleging therein that Ms. Gee refused to communicate in a constructive fashion, demeaned Mr. Gee and his current wife in text messages and social media, and interfered with Mr. Gee's custodial rights, alienating the children from him. He sought shared custody, which was more clearly delineated, affording him more visitation time. On November 20, 2019, Mr. Gee filed an amended rule to modify custody and for contempt, contending he should be designated as domiciliary parent and Ms. Gee should be held in contempt of court for violating the co-parenting guidelines contained in the September 21, 2010 consent judgment.

Ms. Gee also filed a motion to modify custody and visitation. Ms. Gee alleged that since the 2010 consent judgments, Mr. Gee had married Mrs. Lauren Gee, and Mr. Gee and Mrs. Lauren Gee were exhibiting increasingly cruel behavior towards the children. Ms. Gee sought a modification of the custody and visitation such that she be granted sole custody of the children and Mr. Gee's visitation be reduced.

In addition to the motions to modify custody, both parties filed motions for a custody evaluation. On January 10, 2020, the parties entered into a consent

3

judgment, agreeing that Kristen A. Luscher, Ph.D. would perform a custody evaluation in the case.

On March 26, 2020, Ms. Gee filed a petition for protection from abuse on behalf of the minor children, alleging therein that Mr. Gee verbally abused the children and forcefully threw E.G. to the ground. Ms. Gee's requested temporary restraining order was denied and the matter was set for hearing before the commissioner. Both Mr. and Ms. Gee discussed the events leading to the filing of the petition for protection from abuse with Dr. Luscher, who indicated an immediate need for therapeutic intervention and counseling between Mr. Gee and the children until completion of the custody evaluation. Dr. Luscher recommended that Mr. and Ms. Gee and the children work with Tim Kemery, LCSW. Dr. Kemery began meeting with the family in May, 2020. Ultimately, Ms. Gee filed a voluntary motion to dismiss the petition for protection from abuse on November 16, 2020. The trial court signed an order of dismissal on November 19, 2020.

Dr. Luscher issued her report on November 10, 2020. With regard to custody, Dr. Luscher recommended that the children return to the previously established schedule of every other weekend and every Wednesday at Mr. Gee's home. Beginning at the start of summer break in 2021, Dr. Luscher recommended the implementation of equal physical custody, utilizing a week on, week off schedule. Dr. Luscher recommended that Ms. Gee be designated the domiciliary parent, but further recommended that if Ms. Gee exhibited a pattern of failing to collaborate with Mr. Gee about decisions affecting the children, Mr. Gee should be designated the domiciliary parent.

The matter was subsequently set for trial on August 23 and 24, 2021, on the parties' motions to modify custody and visitation and Mr. Gee's motion for contempt. Both parties testified and introduced evidence in connection with their testimony. Mrs. Lauren Gee also testified. Dr. Luscher testified at trial, and her

4

November 10, 2020 report was entered into evidence. Mr. Kemery's deposition was entered into evidence in lieu of his physical testimony at trial. At the conclusion of the trial, the trial court took the matter under advisement, and on December 21, 2021, issued reasons for judgment. The trial court found the following facts were proven at trial:

> After their September 21, 2010 Consent Judgment, the parents had an imperfect, but workable and flexible, co-parenting relationship which lasted for approximately 9 years. This was partially based upon an illusion held by the father and his new wife, Lauren Gee (hereafter referred to as "the father's wife"), that there at least existed a mutual respect and trust between the parents despite their differences, and that all parties had primarily the best interest of the children at heart.

> This all came to [a] crashing halt on August 10, 2021, when the father found a text exchange on the older child's cell phone, between her and her mother, belittling, demeaning and disparaging the father and his wife. This led him to further discovery of what had been long standing communications between the mother and the children, which were extremely derogatory of him and his wife. The discovery of these texts hurt the father and his wife to the core, as they both had believed that they had enjoyed a trusting, loving relationship with the children for many years.

> The father and his wife thereafter had an angry, verbal exchange with the children. After tempers cooled, apologies were made and all seemed well until the children were returned to their mother. Thereafter, things deteriorated rapidly.

> The mother, for her part, placed blame upon the father and his wife, accusing them of violating the child's privacy by looking at her cell phone. She also accused them of verbally abusing the children. She did not apologize for her conduct or role in this matter then, nor had she effectively done so as of date of trial which occurred almost two years after this incident. She withheld custody of the children from the father. The children became distant, and reluctant to see their father. The mother then went publicly on social media and placed accusations of abuse against both the father and his wife. The children began to say they did not feel "safe" around their father.

The trial court further found that throughout the process, Mr. Gee acknowledged and understood that his and the children's treatment plans required mental heath intervention. The trial court noted that Mr. Gee "followed all court orders," and actively engaged in therapy with the children. The trial court further noted that after reinstatement of his physical custody time with the children

5

following the voluntary dismissal of Ms. Gee's petition for protection from abuse, Mr. Gee and Mrs. Lauren Gee's relationship with the children began to normalize.

With regard to Ms. Gee, the trial court found that she continued to maintain her position that she was a "victim," along with the children, in the process. The trial court cited Dr. Luscher's testimony, finding Ms. Gee was clearly "enmeshed" with the children. The trial court further found:

> [Ms. Gee] operates more as a confidante and friend. She actively engaged in what is termed by the experts as "triangulation." This effectively convinces the children that they share common enemies with her. In this case, the "enemies" were the father and his wife.

The trial court found that there had been a material change in circumstances materially affecting the welfare of the children since the last judgment. The trial court determined that it was in the best interest of the children to modify the previous custody arrangement by continuing the award of joint custody of the children, but with physical custody shared on an equal basis and Mr. Gee designated as the domiciliary parent. The trial court also found Ms. Gee in contempt of court for violating two provisions in the parties' co-parenting guidelines, and ordered that Ms. Gee serve a period of five days in jail. Ms. Gee's sentence was suspended upon her remaining in compliance with the trial court's custody orders and not being held in contempt in any further proceedings, and upon payment of $2,880.00 in attorney's fees and costs to Mr. Gee. A written judgment memorializing the trial court's rulings was signed on February 8, 2022. It is from this judgment that Ms. Gee now appeals.

## ASSIGNMENTS OF ERROR

Ms. Gee assigns as error the following:

1. The trial court erred in ruling that there was a material change in circumstances which warranted a revocation of the domiciliary status of Ms. Gee and modified the custodial periods of Mr. Gee from every other weekend from Fridays after school to Sundays at 6:00 p.m. and every Wednesday overnight to Mr. Gee having shared 50/50 physical custody and named the domiciliary parent.

2. The change in custody is not in the best interest of the children.

6

3.    The trial court erred in holding Ms. Gee in contempt.

## LAW AND DISCUSSION

### *Standard of Review*

Every child custody case must be viewed in light of its own particular set of facts and circumstances. *Underwood v. Underwood*, 2021-0277 (La. App. 1 Cir. 10/21/21), 332 So. 3d 128, 139. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. *Yepez v. Yepez*, 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So. 3d 36, 41. Additionally, in most child custody cases, the trial court's determination is based heavily on factual findings. *Id.* It is well settled that a court of appeal may not set aside the trial court's factual findings in the absence of manifest error or unless those findings are clearly wrong. See *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* However, where one or more legal errors interdict the fact-finding process, the appellate court must perform a *de novo* review of the record. *Burns v. Burns*, 2017-0343 (La. App. 1 Cir. 11/3/17), 236 So. 3d 571, 573-74.

On appeal, Ms. Gee argues that this matter should be reviewed under the *de novo* standard, contending that one or more of the trial court's legal errors interdicted the fact-finding process. However, she fails to identify any legal errors, arguing that the evidence she presented, including her testimony and any positive comments made about her by the experts, "was wholly ignored and not considered." Her assignments of error indicate that she disagrees with the trial court's factual findings.

7

As our review of the record does not reveal any legal errors, we review this matter under the manifest error-clearly wrong standard.

*Material Change in Circumstances*

Where parties consent to a custodial arrangement and a consent decree or stipulated judgment is rendered, a party seeking to modify the custody plan is required to prove (1) a change in circumstances materially affecting the welfare of the children has occurred since the rendition of the consent or stipulated judgment, and (2) the proposed modification is in the best interest of the children. *Burns*, 236 So. 3d at 573.

As noted above, the trial court found that there had been a change in circumstances materially affecting the welfare of the children. Specifically, the trial court found that the events of August 10-11, 2019, "led to the complete rupture of the co-parenting relationship that once existed between the father and the mother, with the children suffering the gravest consequences. It exposed the mother's longstanding defiance of joint custody guidelines and court orders to the children's detriment."

In her first assignment of error, Ms. Gee contends the trial court erred in ruling that there was a material change in circumstances that warranted a modification of custody. Ms. Gee points to three factual findings made by the trial court that she contends were not supported by the evidence. First, she contends the trial court erred in its factual finding that Ms. Gee withheld custody of the children, arguing that Mr. Gee voluntarily suspended his custodial visits after she filed the petition for protection from abuse in March, 2020. Ms. Gee next contends the trial court erred in its factual finding that Ms. Gee maintained her position that she was a victim and resisted the proposed mental health intervention for herself and the children. Third, Ms. Gee argues the trial court erred in finding a "long-established pattern" of disparaging comments made by her to the children by text message and a social

8

media "campaign" by Ms. Gee against Mrs. Lauren Gee. According to Ms. Gee, there were only two text message chains with disparaging remarks prior to the August 9, 2019 text message chain, and only two after the August 9, 2019 text message chain. Ms. Gee admits she posted disparaging remarks about Mrs. Lauren Gee on social media in late August of 2019, but contends she regretted making the remarks and it was not a "campaign." Finally, Ms. Gee contends the trial court failed to take into consideration that Mr. Gee was at fault in the way he handled the events of August 10-11, 2019, and his handling of the situation led to the demise of the co-parenting relationship and Mr. Gee's relationship with the children.

Mr. Gee testified that after the divorce from Ms. Gee, the parties had an amicable co-parenting relationship. According to Mr. Gee, after he married Mrs. Lauren Gee, the parties got along "pretty well." He stated that the children's behavior began to change on August 11, 2019, and they told him they were not comfortable at his house. According to Mr. Gee, after the children went to bed on August 10, 2019, he glanced at A.C.G.'s phone, which was plugged in and left out on the kitchen counter. He testified that he saw a text message exchange between A.C.G. and Ms. Gee where Ms. Gee called Mrs. Lauren Gee a child and A.C.G. agreed. Mr. Gee stated that the following morning, he, Mrs. Lauren Gee, and A.C.G. had a heated conversation where he tried to communicate to A.C.G. that it was wrong to talk about someone behind his back while showing him affection and telling him that you loved him. Mr. Gee testified that when he informed Ms. Gee of the incident, she accused him of "emotional and mental abuse" of the children and indicated he had gone "too far." Thereafter, Ms. Gee posted her version of the events on Facebook. Mr. Gee testified that he recommended that he and Ms. Gee use a parenting coordinator, but Ms. Gee refused. According to Mr. Gee, he also suggested counseling for A.C.G., but Ms. Gee would not agree, indicating that she and Mr. Gee should enter into a counseling program.

9

Mr. Gee testified that he received the petition for protection from abuse a couple of weeks after it was filed by Ms. Gee. According to Mr. Gee, the request was denied and a hearing was set, but the hearing was pushed back because of COVID. According to Mr. Gee, he lived under the uncertainty of the petition for protection from abuse for eight months and it caused him "great stress" in how he was going to interact with the children because of how what seemed to him a small and minor incident in March, 2020, was blown out of proportion.

Ms. Gee testified that she and Mr. Gee had a good co-parenting relationship between 2010 and 2019. With regard to the text message she sent to A.C.G. on August 9, 2019, Ms. Gee acknowledged that she used a poor choice of words, but wanted A.C.G. to be comfortable and have a good weekend. Ms. Gee testified that after the August 10-11, 2019 incident, she suggested that she and Mr. Gee attend family therapy and bring the children in as needed, because she believed the therapy needed to start with her and Mr. Gee first. According to Ms. Gee, around August 24, 2019, she made a Facebook post that was disparaging to Mr. Gee and Mrs. Lauren Gee. Ms. Gee acknowledged she should not have put the information out the way she did, but she was frustrated because after the August 10-11 incident, Mr. Gee indicated to her he was going to get an attorney and go to court. According to Ms. Gee, after August 24, 2019, she and Mr. Gee no longer freely communicated.

Dr. Luscher was accepted as an expert in the field of child psychology and an expert in child custody evaluations. She testified as to a family dynamic whereby A.C.G. overidentified with Ms. Gee at the rejection of Mr. Gee and Mrs. Lauren Gee. Dr. Luscher further testified that Ms. Gee had developed an enmeshed relationship with the children, and so the children often assimilated Ms. Gee's feelings, grievances, thoughts, and opinions on a host of things, including Mr. Gee and Mrs. Lauren Gee. Dr. Luscher also testified that there were indications of triangulation within the family, where Ms. Gee and the two children were "pitted

10

against" Mr. Gee and Mrs. Lauren Gee. Dr. Luscher testified that both parents told her that they had "an amicable co-parenting relationship and fluidity in their custody" prior to August 10, 2019. According to Dr. Luscher, the August 11, 2019 confrontation was a "pivotal moment" where these underlying dynamics started to play out in "a really explosive and unhealthy way."

The parents' decline in communication and effective co-parenting is sufficient to constitute a change in circumstances materially affecting the welfare of the children. See Boesch v. Boesch, 16-526 (La. App. 5 Cir. 2/8/17), 210 So. 3d 937, 945. Based upon our review of the record, we find the trial court's factual finding that there had been a material change in circumstances affecting the welfare of the children since the last judgment was reasonably supported by the record and is not clearly wrong. This assignment of error lacks merit.

### Modification of Custody

Because the record supports the trial court's finding that there has been a material change in circumstances since the 2010 consent judgments, the next question to be addressed is whether the modification made by the trial court was in the best interest of the children. The paramount consideration in any determination of child custody is the best interest of the child. See La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So. 2d 731, 738. This applies not only in actions setting custody initially, but also in actions to change custody. Mulkey v. Mulkey, 2012-2709 (La. 5/7/13), 118 So. 3d 357, 364. In determining the best interest of the child, La. C.C. art. 134(A) enumerates fourteen non-exclusive factors to be considered by the trial court, which include:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.
>
> (3) The capacity and disposition of each party to give the child love,

11

affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335(A)(2)(b). However, the law does not mandate equal sharing and the trial court is imbued with much discretion in the determination of what constitutes physical custody or feasible, reasonable visitation. *Beadle v. Beadle*, 2020-0264 (La. App. 1 Cir. 12/30/20), 318 So. 3d 902, 905. Only if it can be shown that a fifty-fifty shared physical custody arrangement is, in fact, both feasible and in the best interest of the child, can such an order be

12

implemented. *Id.*

The trial court noted in its reasons for judgment that Dr. Luscher conducted an extensive custody evaluation, and the trial court found that her comments on the best interest factors contained in La. C.C. art. 134 were well founded by the testimony and evidence adduced at trial. The trial court further indicated that it examined and considered all of the pertinent factors independently and weighed each, giving factor twelve the most consideration and weight. The trial court found that Ms. Gee's "long-standing inability to sincerely facilitate and encourage a close and continuing relationship between the children and their father has worked a great injustice to the children in this case." The trial court adopted Dr. Luscher's recommendation that the parents share equal physical custody, which the trial court ordered to start immediately.

The trial court further noted that Dr. Luscher's report recommended that Mr. Gee be named primary domiciliary parent if Ms. Gee established a pattern of making unilateral decisions about the children. The trial court found that Ms. Gee had in fact done that, both before and after Dr. Luscher's report was issued, and such acts "occurred to such an extent, and show such a lack of judgment and insight on serious issues affecting the children, that a change in primary domiciliary parent [was] necessary." The trial court found the designation of Mr. Gee as primary domiciliary parent was in the best interest of the children. In the trial court's opinion, Mr. Gee demonstrated "the ability to not only handle care-taking and decision making for the children, but exhibit[ed] the measured judgment and insight required to operate as an appropriate primary domiciliary parent, and [] has shown the far greater ability to support and encourage the children's relationship with [Ms. Gee]."

On appeal, Ms. Gee contends the trial court should have given more weight to factors two and eleven. She argues that it was not in the best interest of the children that her domiciliary status be revoked or that Mr. Gee share fifty-fifty

physical custody.

With regard to factor two, Dr. Luscher's report noted that the children historically relied on Ms. Gee for their emotional support. At trial, Dr. Luscher testified that the interactions she observed during her home study between the children and Mr. Gee and Mrs. Lauren Gee were "great." She confirmed that the interactions were comfortable, warm, and familiar; and that the children demonstrated an emotional bond and secure attachment to Mr. Gee.

With regard to factor eleven, at the time of her report in November of 2020, Dr. Luscher indicated that both children reported a desire for more time with Ms. Gee. Dr. Luscher recognized, however, that the family dynamic existing at the time had some influence on the children's opinions. The children did not testify at the trial of this matter.[3]

Mr. Gee testified that Ms. Gee enrolled A.C.G. in counseling, and did not advise him until several hours before the first appointment on June 16, 2021. He further testified that Ms. Gee also set up a counselor for E.G. around that time without informing him. In connection with Mr. Gee's testimony, a list of sixteen medical office visits for the children from December 3, 2019, through February 21, 2020, was introduced into evidence. Mr. Gee testified that he was notified in advance of only one out of the sixteen. In its reasons for judgment, the trial court found Mr. Gee's testimony on this point "credible and substantially unrefuted."

The weight to be given each of the factors listed in La. C.C. art. 134(A) is left to the discretion of the trial court. *Moore v. Prater*, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So. 3d 994, 1000. Based upon our review of the record, we find no

---

[3] Pursuant to a case management schedule issued April 7, 2021, the parties were ordered to exchange their lists of witnesses at least forty-five days prior to the trial scheduled for August 23-24, 2021. Both parties timely exchanged their witness lists, neither of which listed the children as witnesses. On July 22, 2021, Ms. Gee filed a supplemental witness list, seeking to add the children as witnesses. Mr. Gee filed a motion to strike the supplemental witness list as untimely. Mr. Gee's motion to strike was granted, following a pre-trial status conference, by judgment signed August 12, 2021.

manifest error or abuse of discretion in the trial court's determination that a modification of the previous custody arrangement by providing for equal physical custody and designating Mr. Gee as the domiciliary parent was warranted. This assignment of error lacks merit.

## *Contempt*

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. There are two kinds of contempt of court, direct and constructive. *Id.* Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2). The trial court is vested with great discretion in determining whether a party should be held in contempt of court and its decision will be reversed only when the appellate court discerns a clear abuse of that great discretion. *Underwood*, 332 So. 3d at 153-54.

The trial court found there was extensive evidence placed in the record of the mother's conduct, which the court found to be a "serious and substantial violation" of two provisions in the co-parenting guidelines contained in the September 21, 2010 consent judgment. Specifically, the trial court found Mr. Gee's testimony that Ms. Gee did not share information on multiple occasions about the children's medical appointments to be "credible and substantially unrefuted." The trial court further found that Ms. Gee's text messages to the children and social media posts that were introduced at trial evidenced her pattern of "consistent, flagrant violations" of the provision of the September 21, 2010 judgment requiring her to encourage the children to have a relationship with the other parent and not belittle the other parent to the children or in front of the children.

On appeal, Ms. Gee argues that there were not "numerous" text messages to the children placed in the record. Ms. Gee further argues that the trial court did not

15

take into account her testimony that she did discuss with Mr. Gee the younger child being in cheer and the older child's need for therapy.

Ms. Gee does not dispute that she made disparaging remarks about Mr. Gee and Mrs. Lauren Gee. Rather, she takes issue with them being called "numerous." She does not deny that she did not share information about the children's extra-curricular activities and medical appointments, but argues she was not given credit for two things she did discuss with Mr. Gee.

Based on our review of the record, we find no abuse of the trial court's vast discretion in finding Ms. Gee in contempt of court for failing to share information with Mr. Gee about the children's medical appointments and for failing to encourage the children to have a relationship with Mr. Gee and belittling him to the children. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's February 8, 2022 judgment. Appeal costs are assessed against Lana Arender Gee.

**AFFIRMED.**