CARTER, C.J.
|2Leslie Ann Shoebotham appeals a judgment of the trial court modifying the shared custody arrangement set forth in a prior consent judgment, but denying her requests that custody be changed from the shared fifty-fifty arrangement of the consent judgment and that she be named domiciliary parent.
FACTS AND PROCEDURAL HISTORY
Leslie Shoebotham and Glynn Lunney are the divorced parents of three children, born December 12, 1993, August 19, 1996, and April 22, 1998. The youngest two children have special needs. After their divorce, Ms. Shoebotham and Mr. Lunney reached an agreement regarding custody of the children, which was memorialized in a judgment dated December 11, 2008 (“the consent judgment”). The consent judgment provided for joint custody, with physical custody being shared according to the following schedule: Ms. Shoebotham would have the children every Monday and Wednesday; Mr. Lunney would have the children every Tuesday and Thursday; and Ms. Shoebotham and Mr. Lunney would alternate having the children Friday through Sunday.
In March 2010, Ms. Shoebotham moved for a change of custody, seeking to have the children reside with her on weekdays and alternate weekends with each parent. Her motion was based, in part, on the ongoing treatment of the children’s special needs and her contentions that Mr. Lun-ney was not facilitating that treatment during periods in which he exercised physical custody. Mr. Lunney opposed the proposed change in custody but, in a re-conventional demand, suggested that the *353 children would benefit from an alternating weekly physical custody schedule.
| sIn June 2010, the parties met with a hearing officer of the 22nd Judicial District Court who recommended that Ms. Shoe-botham’s requested change of custody be denied and that the parties share physical custody on an alternating weekly basis. However, due to particular difficulties the youngest child, G.I.L., was facing, the hearing officer recommended that during the school year, G.I.L. would reside with Ms. Shoebotham Mondays through Fridays and every third weekend of the month. The hearing officer’s recommendation was made a temporary order of the court on June 16, 2010.
The parties reached an agreement as to custody of the oldest child who was then seventeen years old, which was memorialized by a separate consent judgment signed March 18, 2010. The trial court held a three-day hearing regarding custody of the younger two children (then ages fourteen and thirteen) and ruled that Ms. Shoebotham failed to meet her burden of proving a material change in circumstances so as to warrant modification of the custody arrangement set forth in the consent judgment. The trial court ordered that the parties share equal physical custody of the youngest two children on an alternating weékly basis, with a detailed schedule regarding physical custody during holidays.
Ms. Shoebotham now appeals, designating seven assignments of error. In short, she contends that the trial court applied an incorrect burden of proof to her request for modification of the consent judgment’s custody arrangement, made prejudicial ev-identiary rulings, and, alternatively, erred in modifying the consent judgment’s custody arrangement.
J4DISCUSSION
The time that parents with joint legal custody share with their children is a physical custody allocation of a joint custody plan. Cedotal v. Cedotal, 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433, 436. A party seeking modification of a physical custody decree set forth in a stipulated or consensual judgment must meet the two-prong test of proving that there has been a material change in circumstances (also referred to as a change in circumstances materially affecting the welfare of the child) since the original decree, as well as prove that the proposed modification is in the best interest of the child. Cedotal, 927 So.2d at 436. If the first prong of the test is not met and a material change in circumstances is not shown, the inquiry ends, and there is no basis for altering the physical custody decree. Kingston v. Kingston, 11-1629 (La.App. 1 Cir. 12/21/11), 80 So.3d 774, 778; Bonnecarrere v. Bonnecarrere, 09-1647 (La.App. 1 Cir. 4/14/10), 37 So.3d 1038, 1044, writ denied, 10-1639 (La.8/11/10), 42 So.3d 381. Ms. Shoebot-ham’s contention that she should merely have been required to show that her proposed custody modification was in the children’s best interests is legally incorrect.
In her appellate brief, Ms. Shoe-botham argues that a material change in circumstances was not necessary in this case as both parties stipulated that the custody arrangement set forth in the consent judgment was unworkable. Preter-mitting a determination of whether such a stipulation could negate the requirement of proving the first prong of the test for modifying the custody arrangement set forth in the consent judgment, we find no such stipulation reflected in the record. In his response to Ms. Shoebotham’s request for modification of custody, Mr. Lunney averred that there had been no material | ^change in circumstances that *354 would warrant a change in the existing custody and visitation schedule. However, in a reconventional demand, Mr. Lunney sought to change the custody arrangement to a week-to-week schedule and asserted that such a schedule would be more beneficial to everyone. During Mr. Lunne/s testimony at the hearing, he was specifically asked if he agreed that the custody arrangement set forth in the consent judgment did not work. Mr. Lunney responded, “[n]ot really,” and then explained that the schedule accommodated both his and Ms. Shoebotham’s teaching schedules. He went on to explain that, in asking that the schedule be modified, he did not understand that he might be conceding there was a change in circumstances, but was merely expressing a preference. Mr. Lunney stated that he “would certainly withdraw [his] motion” and that he was “perfectly happy with any 50/50 custody relationship for the two younger boys.” Considering the record as a whole, we do not find, as Ms. Shoebotham suggests, that Mr. Lunney’s request for a change in the custody schedule rises to the level of a stipulation to the first prong of the test for modifying custody.
In three assignments of error, Ms. Shoebotham challenges the trial court’s finding that she did not prove a material change in circumstances, as well as the trial court’s rulings to allow expert testimony by Dr. Colin McCormick and not to allow testimony by the parties’ middle child.
Ms. Shoebotham complains that she was not provided with requested psychological records of Dr. McCormick’s treatment of Mr. Lunney and was therefore denied the opportunity to meaningfully cross-examine Dr. McCormick. The admissibility of a witness’s testimony lies within the discretion of the trial court. Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership, 01-2812 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, 91, writ denied, 03-0306 (La.4/4/03), 840 So.2d 1219. The trial court considered Ms. Shoebotham’s objection to Dr. McCormick’s testimony and ruled that Dr. McCormick would be allowed to testify and that his testimony would be given the weight the trial court deemed appropriate. Ms. Shoebotham’s counsel then indicated he agreed with the trial court’s ruling but wanted the trial court to know that he believed he had been “sandbagged.” After reviewing the entire record, we find that any error in allowing Dr. McCormick to testify was harmless. The trial court’s reasons indicate it did not accord great weight to Dr. McCormick’s testimony, and we find the testimony elicited did not prejudice Ms. Shoebotham.
Ms. Shoebotham also contends the trial court erred in not allowing the parties’ middle child, B.B.L., to testify. Before adjourning court on the first day of the hearing, counsel for the parties discussed with the trial court their intentions for the following day, and the trial court indicated it would hear testimony of the youngest and oldest child in chambers first thing the next morning. The trial court asked if B.B.L. would be present. After some discussion, the trial court was informed by Ms. Shoebotham’s counsel that “[B.B.L.] asked that you make the decision without him testifying.” The following day, the trial court interviewed the other two children in chambers. On the third day of the hearing (approximately two months after day two), Ms. Shoebotham’s counsel indicated that B.B.L. wanted to testify as his brothers had done. Both parties conceded that, initially, B.B.L. had not been listed as a potential witness. The trial court ruled that B.B.L. would not be allowed to testify, stating, “I think that the other two children that testified gave me *355 an abundant amount of information in this case, and he obviously |7didn’t want to testify before that. He was never listed as a witness. I think insofar as the children are concerned, I have heard what I need to hear.” Considering the delicate nature of these proceedings and that the child did not wish to testify in chambers when the others testified, we cannot say the trial court abused its discretion in not allowing B.B.L. to testify on the last day of the hearing.
After considering all of the evidence presented over the course of the three-day hearing, the trial court found that Ms. Shoebotham did not meet her burden of proving a material change in circumstances so as to modify the joint/ shared custody agreement or to name her as domiciliary parent. The trial court noted that this case was extremely fact-specific and that the medical and psychiatric histories of the children were particularly relevant. After considering the evidence presented, the trial court determined that “[t]he issues ■ raised by [Ms. Shoebotham] appeared] to be issues in parenting style.”
This court has carefully considered the entire record on appeal and finds no error in the trial court’s finding. Each custody ease must be viewed within its own peculiar set of facts. Cedotal, 927 So.2d at 437. Due to the delicate nature of the mental and physical health issues involved here, and in consideration of the children’s interests, we do not set forth a discussion of the evidence presented herein. Rather, we refer to the thoughtfully detailed written reasons of the trial court, which are supported by the record.
In its judgment, the trial court ordered that the parties enjoy shared custody of B.B.L. and G.I.L. on an equal basis, with each parent exercising a seven-day uninterrupted period of physical custody. Pursuant to the consent judgment, the parties shared physical custody that alternated during each |sweek: Ms. Shoebot-ham would have the children every Monday and Wednesday; Mr. Lunney would have the children every Tuesday and Thursday; and Ms. Shoebotham and Mr. Lunney would alternate having the children Friday through Sunday. Ms. Shoe-botham argues that if she was properly held to the burden of proving a material change in circumstances on her request to modify custody, then the trial court erred in modifying the consent judgment after finding that no material change in circumstances was proven.
In Bergeron v. Bergeron, 492 So.2d 1193, 1194 (La.1986), the Louisiana Supreme Court addressed the burden of proof applicable to modification of a child custody order, stating:
Although the trial court retains a continuing power to modify a child custody order, there must be a showing of a change in circumstances materially affecting the welfare of the child before the court may consider making a significant change in the custody order. (Emphasis added.)
The qualifying language used in Bergeron was recognized by this court in Mosely v. Mosely, 499 So.2d 106, 109 (La.App. 1 Cir.1986), writ denied, 505 So.2d 1138 (La.1987), wherein it was determined that modifications to terms of stipulated visitation could be made on a showing that they were in the best interest of the children because they were not so substantial as to require proof of a change in circumstances.
Under the consent judgment, the parties exercised physical custody for an equal amount of time over the course of two weeks, but the children were moving from house to house every day during the week, with only a three or four-day block of time with any one parent (depending on wheth *356 er Mr. Lunney was the custodial parent for the weekend). The trial court’s change to an alternating weekly schedule, wherein each parent exercised the [Ssame amount of physical custody time during a two-week period, was not so significant a change as to require proof of a material change in circumstances.
In its reasons for altering the physical custody schedule, the trial court noted that “[b]oth parties have conceded that the original scheduled periods of physical custody have been unworkable.” This court has rejected Ms. Shoebotham’s contention that she was not required to show a material change in circumstances because the parties stipulated that the custody arrangement set forth in the consent judgment was unworkable. Rather, we find that this change to an alternating weekly physical custody schedule was appropriately considered under a best-interest-of-the-children analysis.
In its written reasons, the trial court credited the testimony of Dr. Milton Anderson, who testified as an expert in child psychiatry, “that the only psychiatric research on divorce reflects that the greatest effect on children of divorce is the transition from house to house.” The trial court determined that the best interest of these special-needs children would be served by a seven-day uninterrupted period of physical custody with each parent, which would serve to reduce the frequency of transition and would provide stability to the children on a weekly basis. After reviewing the record herein, we find no error in the trial court’s ruling that this minor change to the physical custody schedule is in the best interest of the children, given their particular needs.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Leslie Ann Shoe-botham.
AFFIRMED.