McClendon, j.
|gThe State filed a petition alleging that J.C., a child, should be adjudicated delinquent and/or in need of services based upon the commission of seven counts of simple burglary, violations of LSA-R.S. 14:62, and one count of theft of a firearm, a violation of LSA-R.S. 14:67.15. He entered admissions to the allegations of the petition and was adjudicated delinquent. At the disposition hearing, the juvenile court committed J.C. to the custody of the Department of Public Safety and Corrections, Youth Services, Office of Juvenile Justice (OJJ), for six years with a recommendation for secure custody. The court ordered the first three years to be served without benefit of probation, parole, or suspension of sentence. J.C. appealed and challenged, among other things, his disposition and the factual basis in support of his admissions. We affirmed his adjudication, modified the disposition to delete the restriction that the first three years of custody be served without benefit of parole and to reflect that J.C. receive credit for time served in secure detention prior to the imposition of his disposition, and remanded to the juvenile court with instructions to amend the custody order and minutes to reflect the modifications. See State in the Interest of J.C, 09-2000 (LaApp. 1 Cir. 7/15/10), 2010 WL 2802104 (unpublished).
The OJJ filed motions to modify disposition in October 2010 and April 2012, both of which the juvenile court denied. On March 25, 2013, the OJJ filed another motion to modify disposition recommending that J.C. be released from secure custody on parole until his full-term date of June 24, 2015. The same day, J.C. filed a motion to modify disposition joining with the OJJ. The juvenile court denied both motions. J.C. now appeals, arguing that the juvenile court erred in denying the motions to modify.[1] For the following reasons, we convert the appeal to an application for a supervisory writ, grant the writ application, and deny the relief requested.
| SF ACTS[2]
Slidell law enforcement officers responded to a complaint that four juveniles were shooting a gun in the woods behind Frit-chie Park in Slidell, Louisiana. Upon contact, an officer performed a weapons search of J.C., during which he recovered a ring. The officer learned that the ring was stolen in a residential burglary and arrested all four juveniles. J.C. admitted to seven burglaries and to shooting a gun in the woods. The police subsequently found hidden in the woods a gun identified as stolen during one of the burglaries.
DISCUSSION
In related assignments of error, J.C. contends that the juvenile court abused its discretion in denying the motions to modify the disposition filed on March 25, 2013. Specifically, he contends that the juvenile court’s denial did not satisfy the unique purpose of the juvenile system, which focuses on rehabilitation rather than retribution. He also contends that the denial of the motions without a hearing denied him due process because he was unable to “explain, answer the [juvenile] court’s concerns, supplement the [juvenile] court with *614 further information to allow the juvenile] court to have a complete understanding prior to its interpretation of the evidence attached.” Finally, J.C. argues that the juvenile court impermissibly ordered the OJJ to provide a particular type of treatment or placement by stating that all four stages of the Louisiana Model (LAMOD) treatment program should be completed.
However, before addressing the arguments of J.C., we must first determine whether this court has jurisdiction to review the matter. This court has appellate jurisdiction over all matters appealed from juvenile courts. LSA-Const. Art. V, § 10A(2). Louisiana Children’s Code article 830 specifies the rulings that may be appealed:
A. An appeal may be taken from any final judgment of a court and shall be to the appropriate court of appeal.
|4B. In delinquency proceedings pursuant to Title VIII, child in need of care proceedings pursuant to Title VI, and families in need of services proceedings pursuant to Title VII, an appeal may be taken only after judgment of disposition. The appeal shall include all errors assigned concerning the adjudication and disposition.
Pursuant to this article, an appeal may be taken only after a judgment of disposition. A judgment denying motions is not a judgment of disposition, and this court lacks jurisdiction to consider the matter appealed. See State ex rel. CJ., 06-1441 (La.App. 1 Cir. 2/14/07), 959 So.2d 972, 975, unit denied, 07-0579 (La.4/5/07), 954 So.2d 147. However, a court of appeal may exercise supervisory jurisdiction in all matters arising within its jurisdiction. LSA-Const. Art. V, § 10A. Therefore, we convert the appeal filed by J.C. to a writ application and exercise our supervisory jurisdiction to review his assignments of error.
Except as provided for in LSA-Ch.C. art. 897.1, after the entry of any order of disposition, the court retains the power to modify it, including changing the child’s legal custody, suspending all or part of any order of commitment, discharging conditions of probation, or adding any further condition authorized by LSA-Ch.C. art. 897B or 899B. It may also terminate an order of disposition at any time while it is still in force. LSA-Ch.C. art. 909.
The juvenile court retains the power to modify a disposition at any time the disposition is in force. See State v. J.R.S.C, 2000-2108 (La.6/1/01), 788 So.2d 424 (per curiam). The court may modify a disposition without a contradictory hearing if the motion seeks less restrictive conditions. LSA-Ch.C. art. 910C. However, if the motion seeks more restrictive conditions, a hearing shall be held. LSA-Ch.C. art. 910D. In this case, the juvenile court had discretion as to whether a hearing would be held given that the motions to modify sought less restrictive conditions, namely that J.C. be released on parole. Thus, contrary to his assertions, J.C. was not denied due process by the juvenile court’s denial of the motions without a hearing.
The motion to modify disposition filed by the OJJ asserts that J.C. was on the third of four stages of the LAMOD, which is a treatment program involving | ^weekly individual counseling and daily group therapy to prepare youth for reentry into the community. The motion also states that J.C. completed the substance abuse treatment program at Swanson Center for Youth and had low difficulties with substance abuse. At the time the motion was filed, J.C. was on a medium custody level, was making progress in obtaining his GED, and had earned a certificate from the National Center for Construction Education and *615 Research. The OJJ recommended that J.C. be released from secure custody on parole supervision until his full-term date. It set forth an aftercare plan for J.C. wherein he would live with his aunt, work, and possibly enroll in school. He would also have to cooperate with the Tracker/Mentor program. J.C. adopted these same reasons in his motion.
The juvenile court included written reasons in support of its ruling denying the motions. It was not persuaded by the assertion that J.C. had low difficulties with substance abuse based on the nature of the facility where he was housed. Pointing out that J.C. was on the third of the four stages of the LAMOD program, the juvenile court recommended that “[a]t a minimum, all four stages of the LAMOD program should be completed.” In support of this recommendation, the court explained that J.C. had received two major violations for threats and intimidation that quarter and was still in need of rehabilitative and corrective treatment. The court also noted that J.C. had “moderate difficulties pertaining to the criminogenic need areas of risk taking and impulsivity.”
Stating that it had “serious doubts that [J.C.] will be successful on parole at this time[,]” the court explained that J.C. had significant issues related to his community and moderate problems related to peer delinquency. He had moderate issues related to his family, and his family had not visited him that quarter. J.C.’s original pre-disposition investigation report, submitted in November 2009, indicated that he presented a moderate risk for nonviolent and other delinquent re-offending and a low risk for violence, while his February 2013 progress report indicated that he presentenced a moderate risk for violence Rand delinquency. The court concluded that J.C. had not made adequate progress in his rehabilitation and treatment.
J.C. cites State ex reí. C.H., 03-1279 (La.App. 3 Cir. 1/28/04), 865 So.2d 947, in support of his position. However, the facts in that ease are distinguishable from those at hand. In State ex reí. C.H., C.H. filed a motion to modify his disposition seeking early release. He argued that he had obtained the highest status level, completed all rehabilitative programs, was an honor roll student, and had the best behavioral classification. Although there was no contradictory unfavorable evidence or opposition to the motion, the juvenile court denied the motion without a hearing and provided no reasons for the denial. On appeal, the third circuit found that the juvenile court abused its discretion and reversed the judgment denying C.H.’s motion to modify. It pointed out that C.H. had availed himself of every rehabilitative program available and that there was no contradictory unfavorable evidence. See State in the Interest of C.H., 865 So.2d at 949-50.
J.C. has not demonstrated the same progress. He was reclassified from a minimum to a medium custody level, had two major violations for threats and intimidation, had not completed LAMOD, and had not obtained his GED. J.C.’s risk for violence, which was assessed to be low in 2009, was increased to moderate in his most recent reassessment. Based on our review of the record, we cannot say that the juvenile court erred in finding that J.C. had “not made adequate progress in his rehabilitation and treatment” and likely would not be “successful on parole.” Therefore, we do not find that the juvenile court abused its discretion in denying the motions to modify disposition filed by J.C. and the OJJ.
We also do not find the district court “impermissibly ordered” the OJJ to provide a particular type of treatment by stating that J.C. “should” complete all four *616 stages of LAMOD. Although the juvenile court has no authority to order a specific placement or treatment for a juvenile committed to the Department of Public Safety and Corrections, it may, and often does, recommend specific 17placement or treatment. See State in the Interest of L.A.H., 02-1867 (La.App. 1 Cir. 12/20/02), 836 So.2d 447, 449. The juvenile court’s statement that “[a]t a minimum, all four stages of the LAMOD program should be completed” was not clearly an order for any particular type of treatment. Instead, it appears to be a recommendation that J.C. complete a treatment program that he was already participating in, and thus, was permissible. Accordingly, we find no merit in these assignments of error.
CONCLUSION
For these reasons, we consider the appeal filed by J.C. as an application for a supervisory writ, we grant the writ application, and we deny the relief requested.
APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED.

. The OJJ also filed a brief with this court assigning error to the juvenile court’s denial of the motions to modify. However, because the OJJ did not file a motion for appeal, it is not a party in the instant appeal.

. The facts presented herein are also provided in this court’s unpublished opinion on the child’s prior appeal of this case.