NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CW 0454

GEORGE W. WOLFE, II

VERSUS

LINDSEY RENEE BREAUD

Judgment Rendered:     MAR 0 2 2020

Appealed from the
Twenty-Third Judicial District Court
In and for the Parish of Ascension, Louisiana
Docket Number 115,954

Honorable Katherine Stromberg, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Pegram J. Mire, Jr.<br>Gonzales, LA | Counsel for Plaintiff/Appellee,<br>George W. Wolfe, II |
| Brian J. Prendergast<br>Baton Rouge, LA<br>and<br>Marcus J. Plaisance<br>Mark D. Plaisance<br>Prairieville, LA | Counsel for Defendant/Appellant,<br>Lindsey Renee Breaud |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, McDONALD, CHUTZ AND
BURRIS,[1] JJ.

---

[1]Honorable William J. Burris, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

Burris, J Concur without reasons.

Judy (?). Dissents and assigns reasons.

Chutz. J. concurs.

**WHIPPLE, C.J.**

In this child custody dispute between parents who share joint custody of their child, the mother appeals from a judgment implementing a 50/50 shared custody plan between the parties. For the following reasons, we convert the appeal to an application for supervisory writs; grant the writ; vacate the November 29, 2018 judgment; deny the parties' requests for change in custody; reinstate the prior May 19, 2017 stipulated judgment of custody; and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Lindsey Breaud and George Wolfe, II, who were never married, are the parents of one child, M.B., born on February 1, 2012. In May of 2016, Mr. Wolfe filed a petition seeking to establish joint custody with Ms. Breaud, with the parties to be named co-domiciliary parents, and to establish a 50/50 physical custody arrangement. Ms. Breaud reconvened, alleging that Mr. Wolfe had committed acts of "domestic abuse" against her and seeking to be awarded sole custody of the child or, alternatively, to be awarded joint custody with Ms. Breaud designated as the domiciliary parent.

Thereafter, by agreement of the parties, the trial court signed a stipulated judgment on September 1, 2016, granting Ms. Breaud and Mr. Wolfe joint custody of the child, with Ms. Breaud designated as the domiciliary parent. The stipulated judgment further provided that Mr. Wolfe was granted physical custodial periods "every Wednesday from school to Thursday morning to school" and every other weekend, and that each party was granted "the right of first refusal" if the other was unable to care for the child on an overnight basis during his or her respective custodial periods. Also, Ms. Breaud was ordered to maintain health, medical, and dental insurance for the child through her employer, and Mr. Wolfe was ordered to pay Ms. Breaud child support in the amount of $350.00 per month. The parties

2

were each to be responsible for one-half of the expenses for school supplies, uniforms, agreed-upon extracurricular expenses, and uncovered medical expenses.

On January 4, 2017, pursuant to a review of the June 24, 2016 stipulated judgment, the parties entered into another consent judgment, approved by the trial court, whereby the joint custody award and domiciliary parent status were unchanged, but some minor modifications were made to Mr. Wolfe's physical custodial periods to extend his Wednesday visitations to Friday mornings for his "off week[s]," i.e., the weeks after his weekend custodial periods.

Thereafter, the parties entered into another consent judgment, which was approved by the trial court, shortening Mr. Wolfe's Wednesday physical custodial periods to "Wednesday from school to Thursday morning," but extending his weekend custodial periods to Monday mornings. The May 19, 2017 stipulated judgment further restated the parties' right of first refusal should either be unable to care for the child overnight.

On June 7, 2017, Ms. Breaud filed a Rule for Contempt, contending, among other things, that Mr. Wolfe had failed to reimburse her for certain medical, dental, and extracurricular expenses and had failed to pay his complete portion of the child's tuition, all as previously ordered by stipulated judgment. In his answer to Ms. Breaud's Rule for Contempt, and despite the entry of the above-noted stipulated judgments, Mr. Wolfe requested that the court set a trial date with regard to his **initial** Petition for Custody, arguing that in his original petition, he had sought a 50/50 sharing of physical custody of the child, but that the parties had been unable to come to any agreement on such 50/50 custody. The matter was set for trial, but was continued numerous times.

On July 18, 2018, Ms. Breaud filed a Motion for Ex Parte Custody and Rule for Sole Custody, alleging that on July 15, 2018, while Mr. Wolfe was exercising physical custody of their child as well as physical custody of his fourteen-year-old

3

son from another relationship, Mr. Wolfe got into a physical altercation with his fourteen-year-old son, leaving bruises and scratches on the teenager's arms and torso. Ms. Breaud further averred that the police were called out to the home and that the teenager was released into her custody at the request of the teenager's mother who resides out of state. According to Ms. Breaud, despite her fear for her own child's safety at that time, the police were unable to release M.B. to her, and Mr. Wolfe refused to allow her to take the child.

Thus, Ms. Breaud sought immediate *ex parte* temporary custody of the child pending a hearing on the matter. Ms. Breaud further prayed for sole custody subject to Mr. Wolfe having "supervised custodial periods" until he completed a psychological evaluation, obtained a substance abuse evaluation, enrolled in and maintained a regular maintenance regime, and submitted to random drug testing prior to exercising custodial periods with the child. The trial court declined to grant Ms. Breaud *ex parte* custody, but did set her Rule for Sole Custody for a hearing. However, the hearing date for Ms. Breaud's Rule was likewise continued.

Ultimately, a hearing on the issue of custody was held on November 7, 2018. At the conclusion of the hearing, the trial court found that the child was not in any danger from Mr. Wolfe and ordered that the parents would share physical custody of the child on a 50/50 basis on a week-to-week schedule with Ms. Breaud designated as the domiciliary parent. In accordance with its oral ruling, on November 29, 2018, the trial court signed the judgment that is the subject of this appeal, which, among other things, again ordered that Ms. Breaud be designated as the domiciliary parent, but further ordered that custody was modified to award the parties 50/50 shared custody to be rotated on a weekly basis.

From this judgment, Ms. Breaud appeals, contending that: (1) the trial court erred in modifying the prior consent judgment where Mr. Wolfe failed to establish a material change in circumstances affecting the welfare of the child; (2) the trial

4

court manifestly erred by increasing Mr. Wolfe's custody and visitation; and (3) the trial court erred by not awarding Ms. Breaud sole custody pursuant to LSA-R.S. 9:364 of the Post-Separation Family Violence Relief Act, where Mr. Wolfe had battered both Ms. Breaud and his teenaged son from another relationship.

## APPELLATE JURISDICTION

As a reviewing court, we are obligated to recognize our lack of jurisdiction if it exists. Starnes v. Asplundh Tree Expert Company, 94-1647 (La. App. 1st Cir. 10/6/95), 670 So. 2d 1242, 1245. Generally, the substance of a final judgment can be altered only after a party has successfully litigated a timely motion for new trial, through a timely appeal, or on the trial court's own motion with the consent of the parties. Bourgeois v. Kost, 2002-2785 (La. 5/20/03), 846 So. 2d 692, 695; Horrell v. Barrios, 2016-1547 (La. App. 1st Cir. 3/15/18), 2018 WL 1373653, *6 (unpublished), writ denied, 2018-0931 (La. 9/28/18), 253 So. 3d 144. An amended judgment rendered without recourse to the above procedures is an absolute nullity. Bourgeois, 846 So. 2d at 696.

A trial court is not authorized to amend a final judgment to conform with its reasons for judgment where the amendment would make substantive changes to the original judgment. Indeed, the trial court's written judgment is controlling, even though the trial court may have intended otherwise. Midtown Medical, L.L.C. v. Department of Health & Hospitals, 2012-1597 (La. App. 1st Cir. 2/15/13), 113 So. 3d 1094, 1096.

Following the November 7, 2018 hearing on the parties' requests to modify custody, the trial court actually signed two judgments, each dated November 29, 2018. While each judgment ordered that custody was modified to award the parties 50/50 shared custody rotated on a weekly basis with Ms. Breaud designated as the domiciliary parent, certain provisions of each judgment differed substantively from the other. Ms. Breaud timely appealed both judgments, which

5

appeals were docketed separately, under docket numbers 2019 CU 0453 and 2019 CU 0454. The November 29, 2018 judgment that is the subject of the appeal in docket number 2019 CU 0453 has a handwritten notation, signed and dated by the trial court on December 20, 2018, vacating the judgment. However, neither appellate record contains a motion for new trial.

Noting that in docket number 2019 CU 0453, it appeared that Ms. Breaud was seeking to appeal a judgment that had been vacated by the trial court, this court issued a Rule to Show Cause Order on April 17, 2019, in that appeal, ordering the parties to show cause by briefs as to why that appeal should or should not be dismissed. Only Ms. Breaud responded.

Additionally, further noting the lack of evidence in the appellate records of either appeal as to which of the two November 29, 2018 judgments was signed first by the trial court, or of a Motion for New Trial or any evidence of agreement of the parties to a substantive amendment to the first-signed November 29, 2018 judgment, this court further issued orders of limited remand in both the present appeal and the appeal bearing docket number 2019 CU 0453, seeking clarification from the trial court as to which of the two November 29, 2018 judgments was signed first.

The trial court responded by filing written reasons with attached exhibits, which were supplemented into the appellate record, stating that it had **no recollection** as to which of the two November 29, 2018 judgments was signed first. The trial court further stated in its written reasons that the fact that it had signed two conflicting judgments was brought to its attention on December 11, 2018, and that "[u]pon discussion with and *agreement from counsel* for both parties" (emphasis added), it vacated the November 29, 2018 judgment that is the subject of the appeal in docket number 2019 CU 0253 because the November 29,

6

2018 judgment that is the subject of the instant appeal "most accurately reflected" the trial court's ruling in open court.

Although the trial court indicated in its reasons for judgment following this court's limited remand that it vacated the November 29, 2018 judgment that is the subject of the companion appeal with the consent of the parties, see LaBove v. Theriot, 597 So. 2d 1007, 1010 (La. 1992), we nonetheless are presented with an obstacle to our exercise of appellate jurisdiction over the November 29, 2018 judgment at issue in this appeal. Based upon the trial court's written reasons on remand indicating that the error in signing two judgments was not discovered until approximately two weeks after both judgments were signed, it is clear that the substantive changes in the second judgment signed on November 29, 2018 were not made pursuant to a contradictory motion for new trial filed by the parties or by the court's own motion with the consent of the parties at the time of signing. See Midtown Medical, L.L.C., 113 So. 3d at 1096. Accordingly, after the first November 29, 2018 judgment was signed, any other judgment signed that day altering the terms of the first-signed judgment would constitute an absolute nullity over which this court would lack appellate jurisdiction. See Starnes, 670 So. 2d at 1246. Thus, on November 29, 2018, the trial court rendered one valid judgment, and one absolutely null judgment that substantively amended its previously signed judgment.

Because the first-signed judgment is controlling even if the trial court may have intended otherwise, the trial court's later attempt to simply choose the November 29, 2018 judgment that better conformed to its oral ruling cannot have the effect of "curing" or "reviving" an absolutely null judgment, if in fact the judgment chosen to stand was the second-signed November 29, 2018 judgment. See generally Bourgeois, 846 So. 2d at 696 (while "unfortunate that the trial judge erroneously signed a judgment that did not reflect his intended disposition," the

trial court was without authority to amend it by issuing a subsequent judgment). Moreover, on the record before us, this court is unable to ascertain whether the November 29, 2018 judgment at issue in the instant appeal was the first-signed and, thus, only valid judgment rendered by the trial court or whether it was the second-signed judgment. If in fact the November 29, 2018 judgment before us in this appeal was the second-signed judgment, it is an absolute nullity over which this court would have no appellate jurisdiction. For these reasons, this court is simply unable to ascertain whether it has appellate jurisdiction over the judgment on appeal.

Considering our inability to determine the validity of the judgment before us and in light of the fact that the other November 29, 2018 judgment has been vacated, this court, in the interests of justice, will convert this appeal to an application for supervisory writs. In doing so, we note that the procedural quagmire before us was created through no fault of the parties, this matter involves child custody and further delay in ruling could negatively affect the best interests of the child, Ms. Breaud has already been forced to pay for two appellate records in an attempt to seek review of the trial court's substantive ruling on custody, and the trial court's ruling on Mr. Wolfe's requested custody change is arguably incorrect.[2]

---

[2]Pursuant to LSA-Const. art. V, § 10(A), the court has supervisory jurisdiction over all "**cases** which arise within its circuit." Under the language of this constitutional provision, the court's supervisory jurisdiction extends to the **case**, not just to a judgment or ruling. Indeed, this court has exercised its supervisory jurisdiction even over cases where the judgments rendered therein were appealable to a lower court within its circuit. See Urgent Care & Family Medicine v. Parker, 2015-1914 (La. App. 1st Cir. 12/22/16), 2016 WL 7441138 (unpublished), writ denied, 2017-0071 (La. 2/17/17), 216 So. 3d 53 (wherein this court exercised supervisory jurisdiction over a case to review a judgment rendered by city court and affirmed by the district court); McGee v. Campbell, 2007-1145, *4 (La. App. 1st Cir. 3/26/08), 2008 WL 11291394 (unpublished) (wherein this court exercised supervisory jurisdiction over a case to review a judgment rendered by city court and affirmed by the district court); Foxy's Health and Racquet Club, Inc. v. Allbritton, 2003-1054, *2 (La. App. 1st Cir. 8/15/03), 859 So. 2d 151, 153 ("[w]hile this court has no jurisdiction to hear this matter as an appeal because it is an appeal from the City Court of Baton Rouge, this court does have supervisory jurisdiction over cases that arise within its jurisdiction," and, "[a]ccordingly, we exercise jurisdiction in this matter"); see also State in the Interest of J.C., 2013-0776 (La. App. 1st Cir. 9/13/13), 134 So. 3d 611, 614. This court has plenary power to exercise supervisory jurisdiction over trial court cases and may do so at any time, according to the discretion of the court. McGee, 2008 WL 11291394 at *4.

See generally MAPP Construction, LLC v. Amerisure Mutual Insurance Company, 2013-1074 (La. App. 1st Cir. 3/24/14), 143 So. 3d 520, 528, and Romadanova v. Chebanu, 2018-0272 (La. App. 1st Cir. 1/8/19), 2019 WL 139389, *12 n.21 (unpublished). Further, we grant the writ, vacate the November 29, 2018 judgment at issue herein given that we are unable to ascertain whether it is a valid judgment, and review the trial court's underlying ruling on the parties' requests for change of custody.

**REVIEW OF THE PARTIES' REQUESTS FOR CHANGE OF CUSTODY**

In cases where the underlying custody decree is a stipulated judgment and the parties have consented to a custodial arrangement with no evidence as to parental fitness, a party seeking a modification of that consent decree must prove that: (1) there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered; and (2) the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So. 2d 731, 738; Elliott v. Elliott, 2010-0755 (La. App. 1st Cir. 9/10/10), 49 So. 3d 407, 413, writ denied, 2010-2260 (La. 10/27/10), 48 So. 3d 1088. A trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliott, 49 So. 3d at 412.

The time that parents with joint legal custody share with their child is the physical custody allocation of a joint custody plan. Lunney v. Lunney, 2011-1891 (La. App. 1st Cir. 2/10/12), 91 So. 3d 350, 353, writ denied, 2012-0610 (La. 4/4/12), 85 So. 3d 130. Physical custody is actual custody. Thus, the standards of proof applying to consent decrees apply to modifications of physical custody as

---

Moreover, in converting the appeal to an application for supervisory writs, we further note that Ms. Breaud filed her motion to appeal from the trial court's judgment within the thirty-day delay for seeking supervisory writs. See Uniform Rules—Courts of Appeal, Rule 4-3; Romadanova, 2019 WL 139389 at *12 n. 21.

well. Lunney, 91 So. 3d at 353; Cedotal v. Cedotal, 2005-1524 (La. App. 1st Cir. 11/4/05), 927 So. 2d 433, 436.

Accordingly, a party seeking modification of the physical custody allocation in a stipulated or consent judgment must meet the two-prong test of proving that there has been a change in circumstances materially affecting the welfare of the child since the consent judgment, as well as proving that the proposed modification is in the best interest of the child. If the first prong of the test is not met and a change in circumstances materially affecting the child is not shown, the inquiry ends, and there is no basis for altering the physical custody decree. Lunney, 91 So. 3d at 353.

In this case, while Mr. Wolfe had originally petitioned for joint custody with the parties named co-domiciliary parents and sharing 50/50 physical custody of the child, the parties subsequently entered into a number of consent custody judgments as outlined above. There is no dispute that the most recent underlying custody decree (the May 19, 2017 stipulated judgment) was a stipulated judgment, wherein the parties agreed that they would have joint custody of the child, with Ms. Breaud designated as the child's domiciliary parent, subject to Mr. Wolfe having specific periods of physical custody. Therefore, in order to modify that custody plan, Mr. Wolfe (or, alternatively, Ms. Breaud with regard to her rule) had to prove, and the trial court had to find: (1) that there had been a change in circumstances materially affecting the welfare of the child since the May 19, 2017 stipulated judgment; and (2) that the modification proposed by Mr. Wolfe—i.e., that the parties share physical custody of the child on 50/50 basis—or, alternatively, by Ms. Breaud— i.e., that she be awarded sole custody of the child—was in the best interest of the child. See Elliott, 49 So. 3d at 413.

Notably, in seeking a change in the physical custody allocation, Mr. Wolfe did not allege a change in circumstances materially affecting the welfare of the

10

child.  Moreover, at the November 7, 2018 hearing, he did not offer any testimony or evidence to establish such a change in circumstances.  Accordingly, he failed to establish that the physical custody allocation should have been modified in his favor.

Ms. Breaud, on the other hand, in seeking a change in custody and Mr. Wolfe's physical custodial periods, clearly alleged a change in circumstances materially affecting the child at issue herein when she averred that the July 15, 2018 altercation between Mr. Wolfe and his teenage son from another relationship had placed Mr. Wolfe and Ms. Breaud's child "at severe risk of harm" and, accordingly, that she was entitled to sole custody of the child.  However, the trial court found that Ms. Breaud had not proven that the child was in any danger from Mr. Wolfe.

The Post-Separation Family Violence Relief Act, LSA-R.S. 9:361 et seq., was designed to protect a child's interest by restricting the rights of an abusing parent in families with a history of family violence.  Michelli v. Michelli, 93-2128 (La. App. 1st Cir. 5/5/95), 655 So. 2d 1342, 1345-1346.  The statute creates a presumption that "no parent who has a history of perpetrating family violence" shall be awarded sole or joint custody of the children.  LSA-R.S. 9:364(A).  Moreover, if the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent.  LSA-R.S. 9:364(E).  "Family violence" is defined in the Act as including, but not limited to, "physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children." LSA-R.S. 9:362(4).

With regard to the incident on July 15, 2018, a review of the record demonstrates that Mr. Wolfe believed his teenaged son, who was fifteen at the time

of the hearing below, had been disrespectful for a couple of days while at Mr. Wolfe's home. Thus, Mr. Wolfe told the teenager to give Mr. Wolfe his cell phone and that Mr. Wolfe would give it back to him when the teenager got on the plane later that day to return home to his mother. After the teenager refused to give Mr. Wolfe the phone, Mr. Wolfe physically took the phone from him. The incident occurred outside of Mr. Wolfe's home while Mr. Wolfe and Ms. Breaud's child was inside the home. After receiving a call from her son, the teenager's mother called the Ascension Parish Sheriff's Office, and a deputy went to Mr. Wolfe's home. Ms. Breaud also went to Mr. Wolfe's home after being called by the teenager's mother. With Mr. Wolfe's permission, his teenaged son left his home with Ms. Breaud, who brought the teenager to the airport to return home to his mother.[3]

Mr. Wolfe's teenaged son testified at the custody hearing. According to the teenager, after he refused to give his father the phone, Mr. Wolfe picked him up, forcibly pinned him against a brick wall in an effort to retrieve the phone, and then slapped him across the face. The teenager further relayed that after the altercation, he had red marks on his arm where he was grabbed, on his left cheek where he was slapped, and on his side from being pinned against the brick wall. While the teenager acknowledged that he did have an "attitude" that day, he stated that he did not believe he had done anything to make his father slap him across the face. According to the teenager, he felt that his father was physically abusive to him that

---

[3]While Ms. Breaud also wanted to take her child with her when she picked up Mr. Wolfe's teenaged son, Mr. Wolfe, who was exercising his physical custody of the child at that time, refused to grant his permission, and thus, Ms. Breaud was not allowed to take her own child with her.

day.[4]

Ms. Breaud testified that while she and her fiancé were driving the teenager to the airport, she realized that there were faint marks starting to develop on the teenager's arm. Thus, when they got to the airport, she took photographs of his face, arm, and back. The photographs, which were introduced into evidence at the custody hearing, depict a red mark on the teenager's face and scratches or abrasions on his arm, finger, side, and back.[5]

Ms. Breaud also offered the testimony of a social worker and clinical therapist who had been providing therapy to Ms. Breaud and Mr. Wolfe's child since August of 2016. The therapist testified that, based on her sessions with the child, she had concerns regarding the child's relationship with Mr. Wolfe, and she opined that the child was in fact scared of Mr. Wolfe, especially after the incident between Mr. Wolfe and his teenaged son.

On the other hand, Mr. Wolfe testified regarding the July 15, 2018 incident that after telling his teenaged son to give him the phone and his son repeatedly refusing, Mr. Wolfe warned his son that if he did not obey, Mr. Wolfe would take it from him. Mr. Wolfe acknowledged that when his son still would not give him the phone, he did physically take the phone from the teenager. However, he denied that he grabbed his son, slapped his son in the face, or threw him against a wall.

Additionally, the Ascension Parish Sheriff's deputy who reported to the

---

[4]The teenager also testified about a 2015 road rage incident he had witnessed between Mr. Wolfe and the driver of another vehicle, wherein Mr. Wolfe had exited his vehicle at a red light, approached the vehicle in front of him, and punched out the driver's side window of the other vehicle. Mr. Wolfe and the other driver then got into a physical altercation. Mr. Wolfe acknowledged that the altercation had occurred and admitted that he ultimately pled guilty to disturbing the peace.

[5]Ms. Breaud also testified about a 2012 incident, where Mr. Wolfe allegedly broke her nose while she was holding their child, who was an infant at the time. However, Mr. Wolfe denied that he had actually broken Ms. Breaud's nose, contending instead that she had actually broken it while attempting to move some furniture. However, he acknowledged that he had entered into some type of plea, although he claimed he did not remember precisely what he had pled to, and attended an anger management course as a result of this particular incident.

scene that day also testified at the hearing. According to the deputy, after assessing the situation that day and speaking with the father and the son, he found no evidence of child abuse and concluded his investigation. The deputy noted that the teenager had said that his father had slapped him and saw that the boy's face was flushed on that side. The deputy further testified that he did not see any marks, bruises, or scratches on the teenager's body, but admittedly did not lift up the boy's shirt to examine him. According to the deputy, if he had felt that something had happened, he would have made an arrest. However, he did not believe that the child was in danger.

After hearing all of the testimony and reviewing the evidence presented, the trial court found as a fact that the child, M.B., was not in any danger from Mr. Wolfe. Specifically, with regard to the incident between Mr. Wolfe and his teenaged son, the court noted that there was a pending custody issue regarding that son and stated that the fact that one mother had called the other mother "to show up" raised "questions." The court relied on the testimony of the sheriff's deputy who investigated the incident and felt there was no danger, noting that the deputy had "no skin in this game" and that the Sheriff's Office takes domestic violence "extremely seriously." Additionally, regarding the testimony of the child's therapist, the court also apparently rejected or discounted the therapist's testimony, noting that the therapist "appeared to be extremely, emotionally interested in this case" and finding that nothing in the therapist's testimony made the court think this child was in any danger.

Considering the foregoing, the trial court obviously found that Ms. Breaud had failed to prove a change in circumstances materially affecting the welfare of the child based on the July 2018 alleged domestic abuse incident to justify the

14

modification she sought.[6] The trial court's determination regarding the required change in circumstances is based heavily on factual findings and cannot be set aside in the absence of manifest error or unless it is clearly wrong. Burns v. Burns, 2017-0343 (La. App. 1st Cir. 11/3/17), 236 So. 3d 571, 573. Additionally, where the fact finder's conclusions are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Olivier v. Olivier, 2011-0579 (La. App. 1st Cir. 11/9/11), 81 So. 3d 22, 28-29. Thus, regardless of how we view these troubling circumstances and conduct by Mr. Wolfe, upon review of the record in its entirety, and in light of the deference that we are obligated to accord to the trial court's credibility determinations in this matter, we are unable to say that the trial court's ultimate factual findings as to the purported domestic violence herein were manifestly erroneous. Thus, those findings will not be disturbed on appeal.

In sum, as to Mr. Wolfe's demands for modification, the record reflects that he failed to allege or prove that there had been a material change in circumstances affecting the welfare of the child since the rendition of the May 19, 2017 stipulated judgment as would entitle him to a change in the physical custody allocation set forth in that judgment. Likewise, we are unable to say that the trial court was manifestly erroneous in finding that Ms. Breaud's allegations of family violence

---

[6]Regarding the 2012 incident wherein Mr. Wolfe allegedly broke Ms. Breaud's nose, despite Mr. Wolfe's admission that he had entered into some type of plea and had attended an anger management course as a result of that particular incident, the court stated that it did not know what had happened and observed that no proof of any charges had been offered. Additionally, with regard to the 2015 "road rage" incident, the court found it to be an "isolated incident" and noted that the child at issue in this custody proceeding was not actually present during the incident.

Notwithstanding the trial court's findings as to those 2012 and 2015 events, we note that both the alleged act of violence against Ms. Breaud and the documented incident of "road rage" occurred **prior to** the rendition of all three prior stipulated judgments of custody herein. See generally Raney v. Wren, 98-0869 (La. App. 1st Cir. 11/6/98), 722 So. 2d 54, 57-58.

15

did not establish a change in circumstances materially affecting the welfare of the child since the rendition of the earlier May 19, 2017 stipulated judgment. As such, a modification of the May 19, 2017 judgment in her favor likewise was not warranted. Thus, we find no error in the trial court's denial of Ms. Breaud's request for sole custody. But, as noted above, as to Mr. Wolfe's request for a change in the custody arrangement, we must conclude that the trial court abused its discretion in modifying the physical custodial arrangement set forth in the May 19, 2017 judgment in Mr. Wolfe's favor. See Tinsley v. Tinsley, 2016-0891, 2016-0892 (La. App. 1st Cir. 1/18/17), 211 So. 3d 405, 418.

## CONCLUSION

For the above and foregoing reasons, we convert the appeal to an application for supervisory writs of review and hereby grant the writ. We further vacate the trial court's November 29, 2018 judgment modifying the parties' physical custody allocation, deny Mr. Wolfe's request for a modification of custody to a 50/50 sharing of physical custody, deny Ms. Breaud's request for sole custody, and reinstate the May 19, 2017 stipulated judgment of custody. This matter is remanded for further proceedings consistent with the views expressed herein.

Costs of this appeal are assessed against George W. Wolfe, II.

**APPEAL CONVERTED TO AN APPLICATION FOR SUPERVISORY WRITS; WRIT GRANTED; NOVEMBER 29, 2018 JUDGMENT VACATED; PARTIES' REQUESTS TO MODIFY CUSTODY DENIED; MAY 19, 2017 STIPULATED JUDGMENT REINSTATED; REMANDED.**

16

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CW 0454

GEORGE W. WOLFE, II

VERSUS

LINDSEY RENEE BREAUD

**GUIDRY, J., dissents in part and assigns reasons.**

**GUIDRY, J., dissenting in part.**

I agree with that portion of the majority opinion finding that we do not have

subject matter jurisdiction to hear this matter as an appeal. I dissent from the

remaining portions of the majority opinion. I believe converting this matter to an

application for supervisory writs is inconsistent with this court's *en banc*

pronouncements in <u>Advanced Leveling & Concrete Solutions v. Lathan Company,</u>

<u>Inc.</u>, 17-1250 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044. Further, the majority,

when justifying converting this matter to an application for supervisory writs,

admits that the portion of the judgment that it ultimately reverses is merely

"arguably incorrect." This is not the clear cut case where the interests of justice

can serve as a basis to convert this matter to an application for supervisory writs,

especially here, where I would find the trial court was correct on the merits.

Therefore, rather than convert this matter to an application for supervisory writs, I

would dismiss the appeal. I also further dissent from that portion of the majority

opinion that reverses the trial court's modification of the custody allocation in

favor of Mr. Wolfe.

The majority readily admits that upon review of the record in its entirety,

and in light of the deference that we are obligated to accord to the trial court's

1

credibility determinations in this matter, we are unable to say that the trial court's ultimate factual findings as to the purported domestic violence herein were manifestly erroneous. The majority points to no other factual findings that they can say were incorrect. The trial court's reasons clearly state:

> Okay. There's been a lot of testimony and a lot of evidence received. You two are terrible co-parents, both of you. Y'all can't get along. I mean, that's plainly established. Both of you have your own agendas. Both of you have your own ways of punishing each other. That is very clear. And I think you also have your own ways of setting each other up, okay. And I think that's a shame. That's a shame for this child.

It is apparent from a reading of these reasons and the court's ordering of the use of the Family Wizard that the trial court determined that the parents failure to communicate well and effectively co-parent constituted a change in circumstances materially affecting the welfare of the child, which had been proven by a preponderance of the evidence.

The parties' failure to communicate well has been held to constitute a change in circumstances materially affecting the welfare of the child. See Harvey v. Harvey, 10-1338 (La. App. 3rd Cir. 3/9/11), 2011 WL 803778 (unpublished), writ denied, 11-0719 (La. 4/29/11), 62 So. 3d 117. See also Poillion v. Thomas, 15-1564 (La. App. 1st Cir. 9/21/17), 2017 WL 4216546 (unpublished) (the parties' decline in communication along with one party reporting alleged abuse by the other to the authorities constituted a change in circumstances); Richard v. Richard, 09-0299 (La. App. 1st Cir. 6/12/09), 20 So. 3d 1061 (the parties' failure to communicate was a factor supporting the trial court's finding of a material change in circumstances); and Boesch v. Boesch, 16-0526 (La. App. 5th Cir. 2/8/17), 210 So. 3d 937 (mother's remarriage and the parties' subsequent decline in communication and effective co-parenting constituted a material change in circumstances).

2

In this case, the majority concludes the trial court erred and did not make an express finding regarding a change in circumstance. I disagree. On the record before us, I find no error in the trial court's determination that Mr. Wolfe met his burden of proving that a material change in circumstances has occurred since the prior May 19, 2017 stipulated custody decree, namely a decline in communication between the parties and their inability to co-parent. I would further find no error in the trial court's ultimate conclusion that these changes affect the welfare of the minor child such that a change in the physical custody allocation was warranted. As such, the trial court was then tasked with modifying the physical custody allocation in light of the best interest of the child. Again, the trial court is vested with broad discretion in deciding child custody cases, and appellate courts must be vigilant to not retry cases. A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. Henry v. Sullivan, 16-0564, p. 10 (La. App. 1st Cir. 7/12/17), 223 So. 3d 1263, 1270-71.

The best interest of the child standard is a fact-intensive inquiry that requires the weighing and balancing of factors concerning the issue of custody on the basis of the evidence presented. The trial court is in the best position to ascertain the best interest of the child and any findings made in furtherance of that best interest should not be disturbed on appeal absent a clear showing of abuse of discretion. Henry, 16-0564 at p. 10, 223 So. 3d at 1270-71. When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989).

In this case, judgment was rendered after a full hearing, where the trial court was personally able to observe both Mr. Wolfe and Ms. Breaud during the hearing

3

and made its findings as to how their actions and interactions affected the child and the best interest of the child. The evidence in the record supports the trial court's modification of the physical custody. Therefore, if I were inclined to exercise supervisory jurisdiction and reach the merits, I would find no manifest error or abuse of discretion and would affirm.